**Karen PINEMAN, et al.**

v.

**William J. FALLON, Chairman of the State Retirement Commission, et al.**

**Civ. No. H–77–164(JAC).**

United States District Court, D. Connecticut.

June 9, 1987.

---

Paul W. Orth, Hoppin, Carey & Powell, Hartford, Conn., for plaintiffs.

Peter T. Zarella, Brown, Paindiris & Zarella, Hartford, Conn., for defendants.

## RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

JOSÉ A. CABRANES, District Judge:

### Introduction

Plaintiffs in this class action are all employees of the State of Connecticut who were employees of the state on June 30, 1975 and remained employees as of April 1, 1977 and who did not reach the retirement age of the pre-existing state retirement system prior to June 30, 1980. The defendants are the Chairman of the Employees State Retirement Commission (originally, in this action, William G. Oechslin and currently William J. Fallon); the Treasurer of the State of Connecticut; and the Comptroller of the State of Connecticut who also serves as Secretary of the State Employees Retirement Commission.

Plaintiffs have brought this action challenging the 1975 Amendments to the Connecticut State Employees Retirement Act. The 1975 legislation established a minimum age of fifty-five for retirement from state employment for both male and female employees with at least twenty-five years of service. Under previous law, female employees with the requisite years of service were eligible to retire with full pension rights at the age of fifty and male employees were eligible for retirement at the age of fifty-five. In 1974, a challenge to the constitutionality of the retirement provisions resulted in a ruling that the disparate treatment of male and female employees was in violation of Title VII of the 1964 Civil Rights Act. This case involves a challenge to the provisions of the retirement system adopted by the legislature in 1975 in response to the 1974 decision.

Plaintiffs argue that the 1975 legislation is unconstitutional. They base this claim on two theories. First, they claim a contractual right against the State of Connecticut to the earlier lower minimum retirement age. Second, plaintiffs assert that the 1975 legislation represents a deprivation of state employees' property interest in pension benefits without due process of the law.

In 1980, this court ruled in favor of the plaintiffs on their contract claim. (Plaintiffs, in their initial suit before this court did not assert a property rights claim.) In 1981, however, the United States Court of Appeals for the Second Circuit remanded the case to the district court for the entry of an order of abstention, to give the judicial system of the State of Connecticut an opportunity to determine certain questions of Connecticut state law. Proceedings in this court were stayed pending consideration of the case by the state courts. In 1985, the Supreme Court of the State of Connecticut held that the State had not entered into a contractual relationship with employees under the minimum retirement age with respect to prospective benefits. Thus, they held that the retirement ar-

rangement provided under the State Employees Retirement Service is not contractual.

Informed by the reasoning of the Connecticut Supreme Court and an independent analysis of the merits of plaintiffs' claim, this court agrees that no legally valid contract exists between the State and its employees which prohibits the legislature's 1975 modification of the retirement system.

Further, in response to plaintiffs' due process claim, this court finds that the 1975 legislative action was neither arbitrary nor irrational. Accordingly, there is no basis for interference by this court with the judgment of the state legislature. Plaintiffs' claims fail on both counts and summary judgment is granted to defendants.

It should be emphasized that the legislature did not undertake to modify the retirement benefits of those who had already left state service by 1975. Indeed, the 1975 enactment provided a "grandfather clause" which permitted all state employees who would become eligible for retirement under the former system within five years of the new legislation to take advantage of the former, more liberal plan. This case and today's ruling have no bearing on the retirement status of these other employees.

## I.

### Background of the Case

The case before this court began in 1977 when the named plaintiffs brought a class action on behalf of themselves and similarly situated state employees. The suit was brought to challenge the constitutionality of a 1975 Connecticut state law, Public Act 75–531 ("the 1975 Act"), which amended portions of the 1939 Connecticut State Employees Retirement Act, 1939 Conn.Pub. Acts 271 ("the 1939 Act" or "SERA"). The factual background leading to the 1977 litigation and the legislative history of the 1975 Act are set forth in detail in *Pineman v. Oechslin*, 494 F.Supp. 525 (D.Conn.1980) ("*Pineman I*"), *vacated and remanded on*

grounds of abstention, 637 F.2d 601 (2d Cir.1981) ("*Pineman II*"). Therefore, only a summary of the background of this case will be set forth here for purposes of the discussion. The 1975 Act was a response to the 1974 decision in *Fitzpatrick v. Bitzer*,[1] in which then Chief Judge T. Emmet Clarie held invalid the provisions of SERA requiring male employees of the state to work five years longer than similarly situated female employees in order to earn state pension benefits. Prior to *Fitzpatrick*, female state employees with twenty-five years of service could retire with full benefits when they reached the age of fifty, while male state employees with twenty-five years of service could not retire with full benefits until they reached the age of fifty-five. In *Fitzpatrick*, Chief Judge Clarie held that this disparate treatment of men and women violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

Between the time of the 1974 *Fitzpatrick* decision and the passage of the 1975 Act, the State of Connecticut permitted both male and female employees to retire with full pension benefits at the ages formerly applicable only to women. *Pineman I*, 494 F.Supp. at 533.

At the next legislative session, the General Assembly passed the 1975 Act, which established for all employees retirement ages identical to the *higher* retirement ages applicable only to male employees prior to *Fitzpatrick*. The 1975 Act also contained a "grandfather clause" which exempted from the new, more stringent age requirements for eligibility those employees who would, before June 30, 1980, reach the lower age threshhold of prior law. *See* Conn.Gen.Stat. § 5–163(a).

In 1980, this court ruled that the 1975 Act constituted an unconstitutional impairment of the State's contractual obligation and enjoined the enforcement of the 1975 Act "with respect to those state employees who were in state service on June 30, 1975 (the effective date of the 1975 Act), are still in the state's service, and will not be eligi-

---

**1.** *Fitzpatrick v. Bitzer,* 390 F.Supp. 278 (D.Conn. 1974), *aff'd in part and rev'd in part on grounds not relevant here,* 519 F.2d 559 (2d Cir.1975),

*aff'd in part and rev'd in part on grounds not relevant here,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976).

ble to retire with full pension benefits prior to June 30, 1980." *Pineman I,* 494 F.Supp. at 528. In granting summary judgment for the plaintiffs, this court analyzed the 1975 Act under the Contract Clause of the United States Constitution [2] consistent with the examination prescribed by the Supreme Court in *United States Trust Co. v. New Jersey,* 431 U.S. 1, 22–23, 25–26, 97 S.Ct. 1505, 1517–1518, 1519–1520, 52 L.Ed.2d 92 (1977) (*"United States Trust"*) and *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 241, 98 S.Ct. 2716, 2720, 57 L.Ed.2d 727 (1978).[3]

Defendants appealed the decision of this court to the United States Court of Appeals for the Second Circuit which, finding abstention appropriate, vacated the judgment and remanded the suit. The court of appeals observed that "[n]o Connecticut Court has yet ruled on the precise question whether the state employees have vested pension rights prior to becoming eligible to receive benefits." *Pineman II,* 637 F.2d at 604. The court of appeals directed the district court to abstain from ruling on the state law issue, "to afford the state courts an opportunity to adjudicate the contract

law aspect of appellees' claim." *Id.* at 605.[4] In the instant dispute, although abstention meant the postponement of the exercise of federal jurisdiction, the court of appeals concluded that abstention would be appropriate "even though the federal courts, thereafter resolving the constitutional issue, will not be obliged to give the state court ruling the conclusive deference that abstention normally entails." *Id.*

Following the procedure established in *England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964) (*"England"*), the court of appeals directed that this court retain jurisdiction pending the state court determination of the state law question. In accordance with the decision of the court of appeals, this court entered an abstention order on August 4, 1981.

The plaintiffs filed a complaint in Connecticut Superior Court on August 25, 1981, and, invoking the doctrine of *England,* reserved their right to return to this court. On May 4, 1984, the superior court ruled that no contractual obligation was created by SERA. That decision was affirmed by the Connecticut Supreme Court

---

**2.** "No State shall ... pass any ... Law impairing the Obligation of Contracts...." U.S. Const. art. I, § 10, cl. 1.

**3.** The analysis in *Pineman I* took as a starting point the common law of the State of Connecticut. *Pineman I,* 494 F.Supp. at 538. At the time of the *Pineman I* decision, "[n]o Connecticut court ha[d] been called upon to consider whether a public employee's expectation of pension benefits, ... is contractual in nature." *Id.* at 541.

*United States Trust* did not address the question of whether a contract had been created since the language of the 1962 covenant at issue in that case made clear that a contractual arrangement had been intended. *United States Trust* 431 U.S. at 18, 97 S.Ct. at 1515. Further, in *United States Trust,* the Supreme Court noted that neither party denied that the covenant constituted a contract. *Id.* In the case before this court, however, the decision turns on the very determination of whether a contract exists. Unlike the situation presented in *United States Trust,* a contract cannot simply be presumed with respect to SERA.

Since *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), it has been a commonplace that federal courts are bound by the declaration of the highest state court on issues of state law. The substantive

law to be applied in any case is the law of the state, except in those matters governed by the federal Constitution or Acts of Congress. At the time of this court's 1981 decision, no opinion had yet emerged from the courts of the State of Connecticut as to the contractual status of SERA. *See generally Cunninghame v. Equitable Life Assurance Society,* 652 F.2d 306, 308 (2d Cir.1981) ("When there is an absence of state authority on an issue presented to a federal court sitting in diversity ... the federal court must make an estimate of what the state's highest court would rule to be its law."). The Connecticut Supreme Court has now spoken. It is, therefore, the task of this court to consider SERA only from the perspective of the federal Constitution.

**4.** The purpose of abstention is generally to allow state court resolution of purportedly unclear state law in order to avoid a substantial federal constitutional question. "Abstention is a judge-fashioned vehicle for according appropriate deference to the 'respective competence of the state and federal court systems.'" *England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 415, 84 S.Ct. 461, 465, 11 L.Ed.2d 440 (1964) (quoting *Louisiana P. & L. Co. v. Thibodaux,* 360 U.S. 25, 29, 79 S.Ct. 1070, 1073, 3 L.Ed.2d 1058 (1959)).

in a ruling issued on March 12, 1985, holding that SERA created no contractual rights that could have been impaired by the 1975 legislation. *Pineman v. Oechslin,* 195 Conn. 405, 488 A.2d 803 (1985) (*"Pineman III"*).

In 1985, plaintiffs, having reserved the federal issues, returned to this court, asking it "to consider the contract issue independently, enlightened by the reasoning of the state courts." *Pineman II,* 637 F.2d at 606 n. 9.

On August 13, 1985, upon defendants' Motion for Determination of the Status of the Proceedings (filed June 17, 1985), this court held that the court of appeals' vacatur of the district court judgment and remand of the case did not render void all pleadings and admissions filed after filing of the initial complaint. *Pineman v. Oechslin,* 616 F.Supp. 1227 (D.Conn.1985) (*"Pineman IV"*). Although denying defendants' motion to initiate a *de novo* proceeding, this court did subsequently grant defendants' request to add a special defense, *to wit:* "If the Retirement Statutes, as set out in the plaintiffs' complaint, prior to P.A. 75–531 set out the terms of an enforceable contract and P.A. 75–531 was an unlawful impairment of those contractual rights the plaintiffs are not entitled to relief because of provisions contained in certain collectively bargained agreements entered into in 1977." Answer and Special Defenses (filed Sept. 23, 1985). *See* Endorsement Order (filed Sept. 19, 1985) on Motion for Permission to File Amended Answer and Add Special Defenses (filed June 17, 1985). Defendants maintain that plaintiffs are estopped from asserting their constitutional claims because the negotiated agreement supersedes and cancels all prior practices and agreements and serves to waive all prior complaints. Because this court grants defendants' motion for summary judgment, it is unnecessary to reach this special defense.

## II.

### *Plaintiffs' Claim under the Contract Clause of the Constitution*

"In general, a statute is itself treated as a contract when the language and circumstances evince a legislative intent to create private rights of a contractual nature enforceable against the State." *United States Trust,* 431 U.S. at 17 n. 14, 97 S.Ct. at 1515 n. 14. In *Pineman III,* the Connecticut Supreme Court stated that a statute does not create vested contractual rights absent a clear statement of legislative intent to contract. *Pineman III,* 195 Conn. at 410–11, 488 A.2d at 806. Finding that there was neither clear expression nor clear intent on the part of the Connecticut legislature to create vested contractual rights in favor of state employees prior to their satisfaction of all retirement eligibility requirements, the Connecticut Supreme Court held that SERA created no contractual rights which would favor the plaintiffs in this case. *Id.* at 416, 488 A.2d at 809.

Whether Connecticut has bound itself by contract is a question primarily of state law, to which this court must "accord respectful consideration and great weight," but "in order that the constitutional mandate may not become a dead letter, we are bound to decide for ourselves whether a contract was made, what are its terms and conditions, and whether the State has, by later legislation, impaired its obligation." *Indiana ex rel. Anderson v. Brand,* 303 U.S. 95, 100, 58 S.Ct. 443, 446, 82 L.Ed. 685 (1938). Where a state statute is challenged as violative of the Contract Clause of the Constitution, "the existence of the contract and the nature and extent of its obligation become federal questions for the purposes of determining whether they are within the scope and meaning of the Federal Constitution, and for such purposes finality cannot be accorded to the views of a state court." *Irving Trust Co. v. Day,* 314 U.S. 556, 561, 62 S.Ct. 398, 401, 86 L.Ed. 452 (1942).

Thus, while giving great significance to the views of Connecticut's highest court, this court must make an independent determination whether the retirement arrangement at issue in this case is indeed a "contract" for Contract Clause purposes. The Supreme Court has recently emphasized that we are to ascribe great weight to the

clear legislative intent or absence of intent to form a contract in reviewing the permissibility of subsequent legislative actions. "[A]bsent some clear indication that the legislature intends to bind itself contractually, the presumption is that 'a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.'" *National Railroad Passenger Corp. v. Atchison, Topeka & Santa Fe Railway Co.*, 470 U.S. 451, 465–66, 105 S.Ct. 1441, 1451–52, 84 L.Ed.2d 432 (1985) ("*Amtrak*") (quoting *Dodge v. Board of Education*, 302 U.S. 74, 79, 58 S.Ct. 98, 100, 82 L.Ed. 57 (1937)).

The language of the 1939 Act which established the earlier age and service requirements for retirement of Connecticut state employees contains no explicit reference to the establishment of a contractual relationship between the state and its employees. Neither the language nor the circumstances of the passage of the State Employees Retirement Act manifests an intent on the part of the Connecticut legislature to bind itself contractually to the State's employees with respect to the level of retirement benefits prior to the time at which an employee becomes eligible to receive such benefits. *See Pineman III*, 195 Conn. at 416, 488 A.2d at 809.

Where the legislature has intended that there be no subsequent changes to benefits provided under a statutory program, it has clearly so stated. For example, with respect to the Connecticut Municipal Employees Retirement Act, the legislature included a separate specific provision that "[t]he general assembly shall enact no legislation which diminishes or eliminates the rights or benefits granted to any individual under any municipal retirement or pension system." Conn.Gen.Stat. § 2–14a. No comparable provision was adopted with respect to SERA.

Further, plaintiffs in this case have themselves pointed to language in handbooks provided to state employees which describes procedures for those whose service in the state system is less than ten years. Plaintiffs acknowledge that the booklets refer to "Termination of Service Before Retirement" and plaintiffs advert to the handbook words, "IF YOU HAVE NO VESTED RIGHTS." Brief in Support of Motion for Summary Judgment (filed Dec. 30, 1985) ("Plaintiffs' Brief in Support") at 12 (capitalization in original). Rather than supporting plaintiffs' claim that a contract exists, however, the language supports defendants' claim that the intent of the state retirement system is to confer benefits only upon the full completion of all terms of eligibility, at which time rights to benefits vest.

It is significant that this case concerns benefits to government workers. In *United States v. Larionoff*, 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977), involving enlistment bonuses for members of the military, the Court held that the entitlement of government workers to pay and benefits "must be determined by reference to the statutes and regulations governing compensation ... rather than to ordinary contract principles." *Id.* at 869, 97 S.Ct. at 2154. Applying this doctrine, "courts have consistently refused to give effect to government-fostered expectations that, had they arisen in the private sector, might well have formed the basis of a contract or an estoppel." *Kizas v. Webster*, 707 F.2d 524, 535 (D.C.Cir.1983), *cert. denied*, 464 U.S. 1042, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984).

Absent specific language in the statute, or an authoritative expression by the State evidencing an understanding that a contract was contemplated, the conclusion of the Supreme Court of Connecticut that SERA does not create vested contractual rights in favor of state employees prior to their satisfaction of all eligibility requirements is a reasonable one. SERA represented the adoption by Connecticut of a policy for dealing with future state pensioners, not a contractual agreement. The 1975 Act, therefore, does not offend the federal Contract Clause. "Policies, unlike contracts, are inherently subject to revision and repeal, and to construe laws as contracts when the obligation is not clearly and unequivocally expressed would be to limit drastically the essential powers of a

legislative body." *Amtrak,* 470 U.S. at 466, 105 S.Ct. at 1452.

## III.

### *Plaintiffs' Claim under the Due Process Clause*

■ Plaintiffs also argue that state employees have a property interest in the retirement fund and retirement benefits which are protected under the Due Process Clause from the allegedly "arbitrary" legislative action taken in 1975. Plaintiffs' contention that the 1975 legislative action was arbitrary or irrational is not persuasive.

In *Pineman III,* Connecticut's Supreme Court declined "to decide whether the 1975 revisions of the act constitute an unconstitutional deprivation of the employees' property interest in the retirement fund without due process of law." *Pineman III,* 195 Conn. at 417, 488 A.2d at 810. Although Connecticut's highest court concluded that "the statutory pension scheme establishes a property interest on behalf of all state employees in the existing retirement fund," *id.* at 416–17, 488 A.2d at 810, it did not address the 1975 legislative action in the due process context.[5]

Assuming that plaintiffs' argument and the *dicta* of the Connecticut Supreme Court are correct, that property rights inhere in prospective eligibility for state retirement benefits, the court notes first that the protections embodied in the Due Process Clause have never been held coextensive with prohibitions against state impairments of pre-existing contracts. *Pension Benefit Guaranty Corp. v. Gray & Co.,* 467 U.S. 717, 733, 104 S.Ct. 2709, 2719, 81 L.Ed.2d 601 (1984) (*"PBGC v. Gray"*). The applicable test for determining whether a legislative action violates the Due Process Clause is whether the action is justifiable on any conceivable rational basis. It is not the role of the court to question the wisdom or fairness of the legislature's policy judgments. Nor is it the role of the court to substitute its opinion on the merits or desirability of the legislation for that of

the legislature which enacted it. It is the role of the court to examine the legislative action merely to determine whether the action was arbitrary and irrational.

The 1975 legislative action labelled arbitrary by plaintiffs in this case was a response to the *Fitzpatrick* decision. *Fitzpatrick,* as noted above, rejected the disparate treatment of male and female employees in the state retirement system. The former system permitted women to retire with five fewer years of service than comparably situated men.

In 1984, the United States Supreme Court held unanimously that an exception to the pension offset provision in the 1977 Amendments to the Social Security Act was constitutional under the equal protection component of the Due Process Clause of the Fifth Amendment. *Heckler v. Mathews,* 465 U.S. 728, 104 S.Ct. 1387, 79 L.Ed.2d 646 (1984). While acknowledging the "important governmental interest of protecting individuals who planned their retirements in reasonable reliance," *id.* at 751, 104 S.Ct. at 1400, on the provisions previously in effect, the Court noted that "[w]e have never suggested that the injuries caused by a constitutionally underinclusive scheme can be remedied only by extending the program's benefits to the excluded class." *Id.* at 738, 104 S.Ct. at 1394. The action of Connecticut's legislature was a conscious effort to achieve uniform treatment of men and women and at the same time to achieve fiscal relief. While the 1975 legislation resulted in a higher retirement age for women, matching the age for men in effect prior to *Fitzpatrick,* "the right to equal treatment guaranteed by the [Due Process Clause of the Fifth Amendment of the] Constitution is not coextensive with any substantive rights to the benefits denied the party discriminated against." *Heckler v. Mathews,* 465 U.S. at 739, 104 S.Ct. at 1395.

The Supreme Court has noted the options available to a state in redressing a deficient

---

**5.** "Although the plaintiff employees alleged a violation of their due process rights in their complaint, this claim was not discussed in the federal or state trial court decisions, nor was it briefed or argued by the parties on appeal." *Pineman III,* 195 Conn. at 417, 488 A.2d at 810.

gender-based statutory scheme and concluded that "[i]n every equal protection attack upon a statute challenged as underinclusive, the State may satisfy the Constitution's commands either by extending benefits to the previously disfavored class or by denying benefits to both parties (*e.g.*, by repealing the statute as a whole)." *Orr v. Orr*, 440 U.S. 268, 272, 99 S.Ct. 1102, 1108, 59 L.Ed.2d 306 (1979). The State of Connecticut has effectively repealed the previous discriminatory statute and instituted an amended retirement system, providing equal treatment to male and female employees.

Under the plaintiffs' theory in this case, it would appear that the State could never change the pre-existing retirement provisions, or alternatively, could only change the law in such a fashion as to "grandfather-in" everyone in service prior to the passage of the legislation. In the circumstances presented here, no one eligible to retire under the old system within five years of the passage of the 1975 legislation was adversely affected.[6] For this court to prohibit the State from amending its retirement plan without effectively giving twenty-five years' notice would be inappropriately to restrict the power and discretion of the state legislature.

"It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976) ("*Usery*"), *quoted in PBGC v. Gray*, 467 U.S. at 729, 104 S.Ct. at 2717; *Amtrak*, 470 U.S. at 472, 105 S.Ct. at 1455. While the Due Process Clauses of the Fifth and Fourteenth Amendments limit the authority of government entities to terminate a person's property interest in government benefits, generally courts have sought to avoid interpreting statutory benefit programs as waiving the exercise of sovereign power to amend the statute in the future. Even with respect to termination or modification of a single individual's property rights, if a decision is made "conscientiously and with careful deliberation," *Regents of the University of Michigan v. Ewing*, 474 U.S. 214, 106 S.Ct. 507, 513, 88 L.Ed.2d 523 (1985), there is no violation of due process. In this case, unless it can be shown that the state legislature, a deliberative body, in contemplating and adopting the 1975 Act acted arbitrarily and irrationally, no violation of due process can be said to exist. Plaintiffs have not met the burden of "establish[ing] that the legislature has acted in an arbitrary and irrational way." *Usery*, 428 U.S. at 15, 96 S.Ct. at 2892.

The legislature evinced a strong concern for the fiscal security of the State Employees Retirement System during a period of financial constraint and at a time when neighboring New York City was facing bankruptcy.[7] It acted in response to the mandate of *Fitzpatrick* to provide equal treatment of men and women under the system. The new minimum uniform retirement age of fifty-five was the age previously applicable to men in the system. The legislature adopted a transition period enabling

---

**6.** Plaintiffs, in a one sentence parenthetical comment, suggest that the "grandfathering" provision of the 1975 Act violates the equal protection clause of the Fourteenth Amendment. Plaintiffs' Brief in Support at 35. In the voluminous filings in this case, plaintiffs make only one other reference to this claim. *See* Supplemental Brief (filed March 11, 1986) at 1. Plaintiffs have provided no basis for their assertion that the legislature's action in permitting state employees within five years of the prior retirement age to retire under the former system is a denial of equal protection under the law. Plaintiffs have not drawn to the court's attention any persuasive, much less controlling, authority for this proposition. Instead, they rely upon a footnote in a dissent which in turn relies upon another dissent. Further, counsel for plaintiffs acknowledged in the hearing on cross-motions for summary judgment that no cases support their suggestion that the grandfather clause arbitrarily discriminates among employees based on age. Certified Official Transcript of Hearing of March 6, 1986 (filed Feb. 5, 1987) at 22–24. A consideration of plaintiffs' claim persuades the court that it is utterly lacking in merit.

**7.** *See, e.g., General Assembly Proceedings 1975: House of Representatives* 6346–50.

employees within five years of the previous minimum age requirement to retire at no loss.

The strong presumption of constitutionality that attaches to legislative acts, *Ferguson v. Skrupa*, 372 U.S. 726, 729–31, 83 S.Ct. 1028, 1030–32, 10 L.Ed.2d 93 (1963), and the requirement that a court apply the test of whether the legislature's action is justifiable on any conceivable rational basis, lead inevitably to the conclusion that the 1975 Act did not violate plaintiffs' due process rights.

### Conclusion

Absent any questions of material fact that would preclude summary judgment on the record before the court, and for the reasons stated above, plaintiffs' motion for summary judgment is denied and defendants' cross-motion for summary judgment is granted.[8] Judgment for defendants shall enter forthwith.

It is so ordered.

---

8. Summary judgment is properly granted only if it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether any issues of material fact are in dispute, the inferences drawn from the record must be viewed in the light most favorable to the non-moving party. Based upon an examination of the full record of the case and the voluminous briefing by the parties, the court concludes that there are no material issues of fact in dispute to render inappropriate the entry of summary judgment for defendants. *See generally Anderson v. Liberty Lobby, Inc.*, —— U.S. ——, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986) (discussing the summary judgment standard and stating that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").