24431

Charles ALSTON, Jr., Fred Anderson, David Arledge, John Arledge (Retiree), Linda Barfield, Robert H. Berry, Wallace E. Berry, Shirley Boan, John Thomas Bowers, Jack Bradley, James Burkett, Tony Burns, Chris Carter, Barbara Cauthen, James Chambers, Jr., Bill Collins, Pat D'Alessio, Herman L. Davis, James Richard Davis, Sr., Matthew Sharpe Davis, Terry Drakeford, Phil Elliott, Edward Fant, Cal Fowler, John Furniss, Neal Gainey, Curtis Gallishaw, Russ Galloway, Daryl Gardner, Edward Gardner, Jr., Mark Gardner, William Gurley, Evey K. Hall, Gene Hastings, Jr., Gene Hastings, Sr., John Hendrix, Sharon Holloman, Randall Craig Hudson, Pamela Hudson, Jesse Jackson, Betty Jennings, Arthur Johnson, Fain Johnson, Dan Johnson, Robert Johnston, III, Robert Joyner, Robert Kardack, Jr., Brian Kersey, George Lee, Julie Lee, Chris Lemacks, Jerry Marthers, Edward C. Miano, Jacob Mickle, Dane Mobley, Benny Moody, Jonathan Moore, Willie Moore, Jr. (Retiree), Roger Morris, Johnny Mullis, Sam McCaskill (Retiree), Cynthia McManus, Mark Nielander, Beverly Osborne, Gary E. (Gene) Parnell, Lionel Patterson, John Perkins, James E. Potteiger, Jr., Jerry Price, Joe Rat-

cliffe, James Preston Ray, William Rodgers Roscoe, David Salmond, Tim Sanders, William (Bill) Sanders, Stephen E. Sheorn, Jr., Bobby Sims, Betty Slade, Clyde (Mike) Smith, W. Alfred Smyrl, Michael Stone, Donnelle Stoney, Glenn Stubbs, Wilfred Stubbs, Johnny Thomas, Willie Thomas, Ronald Thompson, Ronger Truesdale, Richard R. Tucker, Dennis Vincent, Faye Wakefield, Bobby Walsh, George Waters, Carl Watkins, Dean West, Alice Williams, Lorraine Wilson, Charles Wyrick, Martha Wyrick, and Brian H. Zimmerman, Appellants v. CITY OF CAMDEN, South Carolina, Respondent.

(471 S.E. (2d) 174)

Supreme Court

*Wilmot B. Irvin* and *Blaney A. Coskrey, III,* both of *Irvin & Coskrey, L.L.P.,* Columbia, *for appellants.*

*Vance J. Bettis,* of *Gignilliat, Savitz & Bettis,* Columbia; and *Charles V.B. Cushman, III,* Camden, both *for respondent.*

Heard Mar. 6, 1996.

Decided May 20, 1996.

Toal, Justice:

This case concerns the Contract Clauses of the Constitutions of both the United States and South Carolina. The circuit court found that there was no impairment of any contractual right the petitioners may have possessed. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Plaintiffs ("Employees") are employees of defendant City of Camden ("City"). Before April 1993, City provided Employees fringe benefits pursuant to the terms of city ordinances and of an employee handbook. The employee handbook did not contain any disclaimer providing that the handbook was not intended to create a contractual relationship between City and City's employees.

On April 27, 1993, the City Council repealed the ordinances that set the levels of fringe benefits City employees were to receive. One provision of the repealing legislation vested the City Manager with the authority and responsibility for determining "rates of pay, annual leave, and sick leave for all City employees." The City Manager promptly notified all City employees of the repeal of the "benefits" ordinances. He also informed them that a new Personnel Policies and Procedures Manual would take effect on May 12, 1993. The new manual, which expressly superseded the old employee handbook, was distributed to City employees on May 12, its effective date.

The new manual changed the levels of some of the fringe benefits offered by City. The following changes are at issue in this action:

- *Annual Leave*: The maximum accrual of annual leave was reduced from sixty to forty-five days. However, employees who already had accrued annual leave in excess of forty-five days retained their full annual leave balance.
- *Sick Leave*: The maximum accrual for sick leave was increased from forty-five to ninety days for employees hired after May 12, 1993. Such employees had no right to redeem unused sick leave for cash at retirement or death. The old sick leave policy had allowed employees to redeem for cash at death or retirement one-half of their accrued sick leave. The old policy also had allowed

employees to accrue a maximum of forty-five days' sick leave. Employees hired prior to May 12, 1993 had the option of remaining entirely under the old plan or opting into the new plan.

• *Health Insurance Benefits*: The percentage of the cost borne by City for dependent care benefits was reduced from ninety-six percent to ninety-two percent.

Shortly after receiving a copy of the new Personnel Policies and Procedures Manual, Employees, through their counsel, informed City that they objected to the prospective reduction in benefits. On July 21, 1993, Employees brought this action against City. The parties stipulated to the facts of the case, which were never in dispute. After a hearing on both parties' summary judgment motions, the circuit court granted summary judgment to City. The circuit court found that Employees had no contractual rights that were impaired by the prospective reduction in benefits.

Employees appeal.

### LAW/ANALYSIS

Employees argue that both the original ordinances and the original employee handbook constituted contracts between City and Employees. Based on that premise, they argue that the subsequent ordinances prospectively reducing their fringe benefits impaired their employment contracts in violation of the federal and state constitutions. We disagree.

Both the South Carolina Constitution and the United States Constitution bar the state and its municipalities and quasi-municipal corporations from passing laws that impair the obligations of contracts. Section 4 of Article 1 of the South Carolina Constitution states: "No . . . law impairing the obligation of contracts, . . . shall be passed. . . ." Similarly, the United States Constitution provides: "No state shall . . . pass any . . . law impairing the obligation of contracts. . . ." In interpreting the Contract Clause of the South Carolina Constitution, this Court has followed federal precedent construing the federal Contract Clause. *G-H Ins. Agency v. Continental Ins. Co.*, 278 S.C. 241, 246, 294 S.E. (2d) 336, 339 (1982) ("The mandate of the state and federal constitutions relating to impairment of contracts is basically the same.").

The United States Supreme Court has formulated a three-step inquiry for analyzing cases under the federal Contract Clause. As a threshold matter, the law being challenged must actually impair the contract at issue. *United States Trust Co. v. New Jersey*, 431 U.S. 1, 17, 97 S.Ct. 1505, 1515, 52 L.Ed. (2d) 92, 106 (1977). Second, the impairment must be substantial. *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244, 98 S.Ct. 2716, 2722, 57 L.Ed. (2d) 727, 736 (1978). Finally, a law that substantially impairs a contractual obligation violates the Contract Clause unless the law is "reasonable and necessary to carry out a legitimate governmental purpose." *Citizens for Lee County v. Lee County*, 308 S.C. 23, 30, 416 S.E. (2d) 641, 646 (1992); *accord Baltimore Teachers Union v. Mayor and City Council of Baltimore*, 6 F. (3d) 1012, 1018 (4th Cir. 1993), *cert denied*, — U.S. —, 114 S.Ct. 1127, 127 L.Ed. (2d) 435 (1994).

Of course, none of the above-described analysis applies if there is no contract or contractual right subject to impairment. The existence of a contract generally is a question of state law. *Indiana ex rel. Anderson v. Brand*, 303 U.S. 95, 100, 58 S.Ct. 443, 446, 82 L.Ed. 685, 691 (1938); *accord Pineman v. Fallon*, 662 F. Supp. 1311, 1315 (D. Conn. 1987) ("Whether Connecticut has bound itself by contract is primarily a question of state law, to which this court must 'accord respectful consideration and great weight'. . . ."), *aff'd*, 842 F. (2d) 598 (2d Cir.), *cert denied*, 488 U.S. 824, 109 S.Ct. 72, 102 L.Ed. (2d) 48 (1988); *see also, e.g., Maryland State Teachers Ass'n v. Hughes*, 594 F. Supp. 1353 (D. Md. 1984) (construing Maryland law to determine whether legislature may contract away its power to alter pension contracts). In this case, the parties sharply dispute whether City owes Employees any contractual obligations. Employees contend that the old ordinances fixing the levels of fringe benefits, as well as the original employee handbook, constituted contracts with Employees.

### A. Ordinances

Employees first argue that the City of Camden ordinances gave rise to an employment contract between City and Employees and the City could not alter that contract without Employees' consent. We disagree.

To date, no South Carolina case has stated the circumstances under which a statute or ordinance will be regarded as constituting a contract with a private party. However, South Carolina law is clear that public employees generally have no contractual rights in their employment merely by virtue of a statute describing the terms of that employment. In *Plowden v. Beattie,* 185 S.C. 229, 193 S.E. 651 (1937), the auditor of Clarendon County brought an action for wages owed him under state law. One act had set his annual salary at $2,250.00, two-thirds of which was to be payable by the state. However, a later appropriations act reduced by a certain percentage the amount of salary the auditor would receive from the state. The auditor argued the reduction in salary effected by the appropriations act was unconstitutional.[1]

The Supreme Court disagreed. In finding the reduction in salary permissible, the Court stated:

> Public officers are created for the benefit of the commonwealth, *incumbents have no contract or property rights in them,* and, unless otherwise it be provided by the Constitution, they are subject entirely to legislative control. Hence, subject to the Constitution, *the General Assembly may fix the term, provide for removal, abolish the office, reduce the term, and in every respect control the existence, powers, emoluments, and tenure of public officers.*

*Id.* at 237, 193 S.E. at 655 (emphasis added) (citations omitted). This language expresses a presumption that statutes regulating salaries and benefits of public employees do not create contractual rights for the employees whose salaries and benefits the statutes set.

The presumption that statutes generally do not create contractual rights is well supported by precedent throughout the country. In *National R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry. Co.,* 470 U.S. 451, 465-66, 105 S.Ct. 1441, 1451, 84 L.Ed. (2d) 432, 446 (1985), the United States Supreme Court described the rationale for such a presumption:

---

[1] Neither the federal nor the state Contract Clause was the basis for the auditor's claim of unconstitutionality.

[A]bsent some clear indication that the legislature intends to bind itself contractually, the presumption is that "a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise." This well-established presumption is grounded in the elementary proposition that the principal function of a legislature is not to make contracts, but to make laws that establish the policy of the state. Policies, unlike contracts, are inherently subject to revision and repeal, and to construe laws as contracts when the obligation is not clearly and unequivocally expressed would be to limit drastically the essential powers of a legislative body.

(quoting *Dodge v. Board of Educ.*, 302 U.S. 74, 79, 58 S.Ct. 98, 100, 82 L.Ed. 57, 62 (1937)). *See also, e.g., Pineman,* 662 F. Supp. at 1316 ("Neither the language nor the circumstances of the passage of the State Employees Retirement Act manifests an intent on the part of the Connecticut legislature to bind itself contractually to the State's employees with respect to the level of retirement benefits prior to the time at which an employee becomes eligible to receive such benefits."); *Anderson v. City of Northlake,* 500 F. Supp. 863 (N.D. 1980) (finding ordinance setting personnel policy for defendant City of Northlake did not create contractual rights in the petitioners), *aff'd,* 657 F. (2d) 272 (7th Cir.), *cert. denied,* 454 U.S. 1081, 102 S.Ct. 636, L.Ed. (2d) 615 (1981); *Spiller v. State,* 627 A. (2d) 513, 516 (Me. 1993) (finding no clear intent in the retirement statute at issue to create "immutable contract rights for all state employees").

An examination of the ordinances at issue demonstrates no intent by City to bind itself contractually to Employees. The purpose of the original personnel ordinance was "to establish a standardized personnel system and to implement the system as efficiently as possible." (City of Camden Ordinance § 37.001(B); R. p. 112). In *City of Northlake,* the personnel ordinance at issue stated that its purpose was to "set forth a uniform policy concerning Northlake personnel to better permit sound administration of the government." *City of Northlake,* 500 F. Supp. at 866. The federal district court found that the ordinance's stated purpose supported the finding that the ordinance was intended merely as statement of city *policy*

rather than as a contract. *Id.* The stated purpose for the City of Camden's ordinance is similar to that of the Northlake ordinance; it simply expresses City's *policy* intention to have a uniform system.

We find unpersuasive Employees' argument that the mandatory language in City's original personnel ordinance evinces an intent by City to enter into contractual relations with Employees.[2] First, the mandatory language is just as consistent with an intent to have a uniform policy as with an intent to enter into contracts. Second, many statutes and ordinances contain mandatory language; that fact alone is not particularly indicative of an intent to enter into contractual relations with anyone.

Employees also argue that the original personnel ordinances should be considered in conjunction with the first employee handbook and that the existence of an employee handbook shows that City Council intended for City to enter into contractual relations with Employees. We disagree. Most of the first personnel ordinances were enacted on October 13, 1981.[3] The original employee handbook is undated; it is unclear whether it was issued contemporaneously with the passage of the personnel ordinances or sometime later. If it was issued later, then its issuance certainly provides no indication of City Council's intent in enacting the personnel ordinance. *Cf. Home Health Servs., Inc. v. DHEC,* 298 S.C. 258, 262 n. 1., 379 S.E. (2d) 734, 736 n. 1 (Ct. App. 1989) (legislature's subsequent acts "cast no light on the intent of the legislature which enacted the statute being construed"). In any case, absent any information about when the original employee handbook was issued, one can reach no conclusion from the issuance of the handbook about City Council's intent in enacting the personnel ordinances. Employees have not met their burden of overcoming the presumption that the ordinances did not give rise to contractual rights.

The personnel ordinances did not give rise to any contract between City and Employees. Accordingly, no additional Contract Clause analysis is necessary as relates to the repealed personnel ordinances.

---

[2] For example, section 37.049, City of Camden Code of Ordinances relating to annual leave, provided that city employees "shall" be entitled to leave.

[3] Some of these ordinances were later amended.

## B. Employee Handbook

Employees also argue that the original employee handbook constituted a contract between City and Employees. Even assuming the original employee handbook constituted such a contract,[4] Employees had no reasonable expectation that the terms of the "contract" would remain unchanged. Therefore, there was no substantial impairment of any employment contract that may have existed.

For purpose of Contract Clause analysis, a statute or ordinance can be said to substantially impair a contract when it alters the reasonable expectations of the contracting parties. *See, e.g., Energy Reserves Group v. Kansas Power & Light Co.*, 459 U.S. 400, 411, 103 S.Ct. 697, 704, 74 L.Ed. (2d) 569, 580 (1983) ("Total destruction of contractual expectations is not necessary for a finding of substantial impairment. On the other hand, state regulation that restricts a party to gains it reasonably expected from the contract does not necessarily constitute a substantial impairment."); *United States Trust Co. v. New Jersey*, 431 U.S. at 19-20 n. 17, 97 S.Ct. at 1516-17 n. 17, 52 L.Ed. (2d) at 108 n. 17 (referring to impairment as an interference with the "legitimate expectations of the contracting parties"). Here, Employees would have to have had a reasonable expectation that the level of fringe benefits set by the first employee handbook would continue for some specific amount of time (or possibly in perpetuity).

The contracts (if any) created by the original employee handbook did not give rise to any legitimate expectation that the fringe benefits provided for therein would continue for any specific amount of time. Recent rulings by this Court make clear that contractual rights created by employee handbooks are subject to unilateral modification at any time, provided the employees receive actual notice of the modifications. *King v. PYA/Monarch, Inc.*, 317 S.C. 260, 453 S.E. (2d) 885 (1995); *Fleming v. Borden, Inc.*, 316 S.C. 452, 450 S.E. (2d) 589 (1994). This rule rests on the recognition that "the employer-employee relationship is not static. Employers must have a mechanism which allows them to alter the em-

---

[4] In light of our conclusion that any contractual rights that may have existed suffered no substantial impairment, we need not determine whether, under the facts of this case, the employee handbook created a contract between City and Employees.

ployee handbook to meet the changing needs of both business and employees." *Fleming*, 316 S.C. at 458, 450 S.E. (2d) at 595. This is especially true where, as here, Employees concede their at-will status. *See, e.g., Cotter v. Desert Palace, Inc.*, 880 F. (2d) 1142, 1145 (9th Cir. 1989) ("An employer privileged to terminate an employee at any time necessarily enjoys the lesser privilege of imposing prospective changes in the conditions of employment.").

Employees argue that *Fleming*'s rationale does not apply to employment contracts where the employer is a governmental entity like a municipality. We disagree. If anything, government should have more flexibility than business with respect to the employer/employee relationship. Therefore, we hold that *Fleming* applies to governmental entities and that Employees suffered no substantial impairment of any contracts they may have had with City.

## CONCLUSION

We reject Employees' arguments. Most important to this Court, the arguments lack merit legally. Perhaps more important to the state and its municipalities, however, any ruling other than the one we issue today would cripple the efficient operation of government. For the foregoing reasons, we AFFIRM.

FINNEY, C.J., and MOORE WALLER, and BURNETT, JJ., concur.