KAREN K. PINEMAN ET AL. *v.* WILLIAM G. OECHSLIN ET AL.
(12529)

HEALEY, PARSKEY, SHEA, DANNEHY and BIELUCH, Js.

Argued December 13, 1984—decision released March 12, 1985

*Paul W. Orth,* with whom was *Austin Carey, Jr.,* for the appellants-appellees (plaintiffs).

*Peter T. Zarella,* with whom was *Richard R. Brown,* for the appellees-appellants (defendants).

PARSKEY, J. The principal issue presented by this appeal is whether state employees have contractual interests in the State Employees Retirement Act (act), General Statutes §§ 5-152 through 5-192x. Because we agree with the trial court that the act creates no contractual rights we find no error.

The plaintiffs brought a class action in the United States District Court for the District of Connecticut against the named defendant, chairman of the state employees retirement commission, Henry E. Parker, state treasurer, and J. Edward Caldwell, state comptroller. The action sought a declaratory judgment establishing that the State Employees Retirement Act, §§ 5-152 through 5-192x, as amended by No. 75-531 of the 1975 Public Acts, impairs the state's contractual obligations to the plaintiffs in violation of article I, § 10, of the constitution of the United States which provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." The district court, agreeing with the plaintiffs, issued a permanent injunction "requiring the defendants to administer the State Employees Retirement Act in a manner which respects the plaintiffs' contractual rights." *Pineman*

v. *Oechslin,* 494 F. Sup. 525, 554 (D. Conn. 1980). On appeal, the United States Court of Appeals for the Second Circuit vacated the district court's judgment and remanded the case with direction that the district court abstain from adjudicating the federal constitutional claim so as to afford the state court an opportunity to adjudicate the plaintiffs' contract claims as a matter of state law. *Pineman* v. *Oechslin,* 637 F.2d 601 (2d Cir. 1981). The district court thereafter issued an abstention order setting forth the questions which appeared to be undecided, stayed further proceedings of the federal action and retained jurisdiction for such further proceedings as may be appropriate or necessary upon the conclusion of the state court proceedings.

Thereafter the plaintiffs brought an action in the Superior Court seeking, inter alia, a judgment declaring that the "pre-1975 Retirement Act . . . created a contractual obligation obliging Connecticut to maintain the pre-1975 retirement ages for female state employees who had not yet begun receiving retirement benefits when such act was revised by the act on June 30, 1975." The individual plaintiffs consisting of three female (Karen Pineman, Judith Narus, Rose Schewe) and three male (Alphonse S. Marotta, Daniel Clifford, Alfred K. Tyll) state employees, sought and were granted an order certifying their right to maintain the action on behalf of all similarly situated state employees. The trial court, after examining the Retirement Act and other statutes which it deemed relevant, concluded that in enacting the Retirement Act the legislature never intended to create contractual rights in state employees. We agree with the trial court's conclusion.

### HISTORICAL BACKGROUND OF THE STATE EMPLOYEES RETIREMENT ACT

The act as initially adopted in 1939 permitted male employees to retire at age fifty-five with twenty-five

years of service and female employees to retire at age fifty with twenty-five years of service. General Statutes (Sup. 1939) § 67e et seq. This disparate treatment of male and female employees continued into 1974. General Statutes (Rev. to 1975) § 5-162. In that year, the act was held to violate the prohibition against sex-based employment discrimination contained in Title VII of the Civil Rights Act of 1964. *Fitzpatrick* v. *Bitzer*, 390 F. Sup. 278 (D. Conn. 1974), aff'd in part and rev'd in part on other grounds, 519 F.2d 559 (2d Cir. 1975), aff'd in part and rev'd in part on other grounds, 427 U.S. 445, 96 S. Ct. 2666, 49 L. Ed. 2d 614 (1976). At the 1975 session of the General Assembly, the act was amended to establish fifty-five years as the retirement age for all state employees with twenty-five years of service. Public Acts 1975, No. 75-531.[1] It also provided

---

[1] Public Acts 1975, No. 75-531, provides in relevant part:

"AN ACT CONCERNING ELIGIBILITY FOR STATE RETIREMENT.

"Section 1. Subsection (c) of section 5-162 of the general statutes is repealed and the following is substituted in lieu thereof:

"(c) Schedule 1—Twenty-five or more years of state service.

"(1) EXCEPT AS PROVIDED IN SECTION 5 OF THIS ACT, [Each] EACH member who has completed twenty-five or more years of state service shall be retired, on his own application or on the application of the executive head of the agency employing him, on the first day of the month named in the application, and on or after the member's fifty-fifth birthday[, if a man, or fiftieth birthday, if a woman]. . . .

"Sec. 2. Subsection (d) of section 5-162 of the general statutes is repealed and the following is substituted in lieu thereof:

"(d) Schedule 2—Less than twenty-five years of state service.

"(1) EXCEPT AS PROVIDED IN SECTION 5 OF THIS ACT, [Each] EACH member who has completed less than twenty-five years of state service shall be retired on his own application, on the first day of the month following his application, if [he then meets any one of the following conditions: (A) The member is a woman who has completed five years of state service and reached her sixty-fifth birthday; (B) the member is a woman who has completed ten years of state service and reached her fifty-fifth birthday; (C)] the member [is a man who] has completed ten years of state service and reached his sixtieth birthday. . . .

"Sec. 3. Subsection (c) of section 5-163 of the general statutes is repealed and the following is substituted in lieu thereof:

"(c) EXCEPT AS PROVIDED IN SECTION 5 OF THIS ACT, [A] A

that any employee with twenty-five years of state service who attained the age of fifty prior to June 30, 1980, could elect to retire and receive normal retirement benefits.

member whose state service is terminated because of economy, lack of work or abolition of his position, or who, being an army or air national guard technician in the military department, is dismissed by reason of separation from the national guard because of age, after he has completed twenty-five years of state service but before he has reached his fifty-fifth birthday, [if a man, or her fiftieth birthday, if a woman,] shall be entitled to a retirement income. The amount of each monthly payment shall be determined from subsection (c) of section 5-162, if the member elects the first day of the month on or after such birthday as his retirement date; and shall be the actuarial equivalent of such amount, as determined by the retirement commission, if the member elects the first day of the month on or after his termination date as his retirement date.

"Sec. 4. Subsection (a) of section 5-166 of the general statutes is repealed and the following is substituted in lieu thereof:

"(a) EXCEPT AS PROVIDED IN SECTION 5 OF THIS ACT, [A] A member who leaves state service before he is eligible for retirement but after completing at least ten years of state service, of which at least five years shall have immediately preceded the date of his leaving state service, shall continue to be a member, and shall be eligible for a retirement income as provided in section 5-162, but on a reduced actuarial basis, as determined by the retirement commission[, provided, if such member is a woman she shall be eligible upon reaching her fiftieth birthday and if a man, he shall be eligible] upon reaching his fifty-fifth birthday. Such vested retirement income shall not be subject to divestiture by subsequent employment unless the member withdraws his retirement contribution.

"Sec. 5. (NEW) (a) Any member who has completed twenty-five years of state service and has reached the age of fifty prior to June 30, 1980, may elect to be retired on the first day of the month following such application and receive retirement benefits in accordance with the provisions of subdivision (3) of subsection (c) of section 5-162 of the general statutes, provided such member so elects prior to June 30, 1980.

"(b) Any member who has completed at least ten but less than twenty-five years of state service and reached the age of fifty-five prior to June 30, 1980, may elect to be retired on the first day of the month following his application and receive retirement benefits in accordance with subsection (d) of this section, provided such member so elects prior to June 30, 1980.

"(c) Any member who has completed at least five but less than ten years of state service and has reached the age of sixty-five prior to June 30, 1980, may elect to be retired on the first day of the month following such application and receive retirement benefits in accordance with the provisions of subsection (d) of this section, provided such member so elects prior to June 30, 1980. . . ."

## APPLICABLE RULES OF STATUTORY CONSTRUCTION

Prior to entering a discussion of whether the act creates vested contractual rights in the plaintiff employees, we note the appropriate standard of statutory interpretation traditionally applied to questions such as the one before us. "In determining whether a law tenders a contract to a citizen it is of first importance to examine the language of the statute. If it provides for the execution of a written contract on behalf of the state the case for an obligation binding upon the state is clear. Equally clear is the case where a statute confirms a settlement of disputed rights and defines its terms. On the other hand, an act merely fixing salaries of officers creates no contract in their favor and the compensation named may be altered at the will of the legislature. This is true also of an act fixing the term or tenure of a public officer or an employee of a state agency. The presumption is that such a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise." (Footnotes omitted.) *Dodge* v. *Board of Education,* 302 U.S. 74, 78-79, 58 S. Ct. 98, 82 L. Ed. 57 (1937). "The principal function of a legislative body is not to make contracts but to make laws which declare the policy of the state and are subject to repeal when a subsequent legislature shall determine to alter that policy." *Indiana ex rel. Anderson* v. *Brand,* 303 U.S. 95, 100, 58 S. Ct. 443, 82 L. Ed. 685 (1938).

Although the legislature may authorize a contract to be made on behalf of the state; *Wilson* v. *East Bridgeport School District,* 36 Conn. 280, 282 (1869); there exists a "well-established presumption" against finding that a statute creates private vested contractual

rights absent a clear showing of legislative intent to the contrary. *Taliaferro* v. *Dykstra,* 434 F. Sup. 705, 710–11 (E.D. Va. 1977). Since the effect of such authorization is to surrender the legislature's governmental power of revision and to restrict the legislative authority of succeeding legislatures, a legislative intent to create contractual rights will not be assumed unless the statutory language expressing such intent is clear and unambiguous. *Indiana ex rel. Anderson* v. *Brand,* supra, 110 (Black, J., dissenting).

### APPROACH TO PUBLIC PENSIONS

The specific issue of whether Connecticut's statutory retirement plan for state employees is contractual in nature is a question of first impression before this court.[2] To guide us in resolving this issue, we look to the various approaches adopted by other courts that have been confronted with similar questions. See *Pineman* v. *Oechslin,* 637 F.2d 601, 604–605 (2d Cir. 1981). In a few states, the issue has been removed from the court's domain by the enactment of constitutional or statutory provisions expressly stating that public pension plans give rise to vested contractual rights. Annot., "Vested Right of Pensioner to Pension," 52 A.L.R.2d 437, 441 (1957); see, e.g., N.Y. Const., art. V, § 7; *Pineman* v. *Oechslin,* 494 F. Sup. 525, 544 n.36 (D. Conn. 1980). No such provision exists in the statutes or constitution of Connecticut.

---

[2] In *State ex rel. Kirby* v. *Board of Fire Commissioners,* 129 Conn. 419, 29 A.2d 452 (1942), we had occasion to address the general issue of the right of governmental employees to public pensions. In that case, involving a claim by a fireman to retirement benefits, we agreed with the defendant board; A-179 Rec. and Briefs, p. 532; that the relator had no contractual rights to his pension. "[U]nder retirement acts generally even where the person eligible for retirement has contributed by way of dues or assessments to make up the retirement fund he has no vested right to retirement." *State ex rel. Kirby,* v. *Board of Fire Commissioners,* supra, 426. We went on to observe, however, that the relator had a statutory right to receive his pension under the provisions of the municipal charter, which at that time was granted by special act of the General Assembly. See *Baker* v. *Norwalk,* 152 Conn. 312, 314, 206 A.2d 428 (1965).

Where such an express statement of legislative intent is lacking, the traditional view, still adhered to in many jurisdictions, is that there are no rights, contractual or otherwise, under a pension plan until the state employee satisfies all the eligibility requirements, including age and years of service, for receiving benefits. See *Pineman* v. *Oechslin,* 637 F.2d 601, 605 (2d Cir. 1981), and cases cited therein. This approach is premised on the view that statutory pension benefits are in the nature of a gratuity, and that public employees have merely an expectancy interest in the pension fund, revocable at the will of the legislature. See *Christensen* v. *Minneapolis Municipal Employees Retirement Board,* 331 N.W.2d 740, 745–46 (Minn. 1983); Cohn, "Public Employee Retirement Plans — The Nature of the Employees' Rights," 1968 U. Ill. L.F. 32, 34–37 (1968). A simply applied but rigidly doctrinaire analysis developed in which the nature of the employee's rights was classified as contractual or gratuitous, depending upon whether participation in the plan was voluntary or compulsory. Voluntary plans were deemed to create vested rights while compulsory participation meant no vested interest accrued. See annot., 52 A.L.R.2d, supra, pp. 441–43.

This rigid analytic approach, and the gratuity concept generally, have been the subject of increasing criticism and judicial discomfort. As one commentator recently put it: "In the seventh decade of the 20th century it seems somewhat absurd to speak of a pension as in the 'nature of a bounty springing from the appreciation and graciousness of the sovereign.' [*Blough* v. *Ekstrom,* 14 Ill. App. 2d 153, 160, 144 N.E.2d 436 (1957).] Medieval notions of the beneficence and graciousness of worldly monarchs have no relevance to modern notions of sovereignty." Cohn, supra, p. 37; see *Christensen* v. *Minneapolis Municipal Employees Retirement Board,* supra, 746–47; *Spina* v. *Consoli-*

*dated Police & Firemen's Pension Fund Commission,*
41 N.J. 391, 401, 197 A.2d 169 (1964). We find this criticism valid and persuasive, and therefore decline to view the retirement benefits created by the act as mere gratuities, as to which the legislature enjoys an unfettered power of revocation.

In search of a more modern and realistic approach to the nature of employee rights in public pensions, a growing minority of jurisdictions has construed the existence of vested rights, contractual in nature, even in the absence of a clear expression of legislative intent to create such rights. Three basic approaches have evolved in jurisdictions analyzing public pensions in contractual terms. Two of these employ a limited vesting concept, holding that pension rights vest upon employment subject to "reasonable" modification by the public employer. See *Pineman* v. *Oechslin,* 637 F.2d 601, 605 (2d Cir. 1981), and cases cited therein. One version of the limited vesting approach permits a modification of vested rights if the change bears a material relation to the purposes of the pension system, and if any resultant disadvantage to the employee is accompanied by an offsetting advantage. See, e.g., *Stork* v. *California,* 62 Cal. App. 3d 465, 133 Cal. Rptr. 207 (1976); *Police Pension & Relief Board* v. *Bills,* 148 Colo. 383, 366 P.2d 581 (1961). The second view allows those modifications to the retirement contract that reasonably enhance the actuarial soundness of the retirement fund. See, e.g., *Harvey* v. *Allegheny County Retirement Board,* 392 Pa. 421, 141 A.2d 197 (1958). Finally, a third approach characterizes the public employee's interest in a statutory pension in terms of promissory estoppel, holding that rights thereunder are subject to modification pursuant to the state's police power. See *Christensen* v. *Minneapolis Municipal Employees Retirement Board,* supra, 747. Under this last approach, which was utilized by the federal district court in determining the

plaintiff employees' rights under the act, a statutory pension plan is found to constitute a contract implied-in-law based upon the reasonable expectations of the public employees. See *Pineman* v. *Oechslin,* 494 F. Sup. 525, 538–45 (D. Conn. 1980).

Although there is a seductive appeal in the contract-oriented approaches adopted by other jurisdictions, we decline to depart from the well established rules of statutory construction discussed earlier, namely, that a statute does not create vested contractual rights absent a clear statement of legislative intent to contract. Upon examination of the case law in this area, it becomes clear that the contract approach plays havoc with basic principles of contract law, traditional contract clause analysis and, most importantly, the fundamental legislative prerogative to reserve to itself the implicit power of statutory amendment and modification. See *Flemming* v. *Nestor,* 363 U.S. 603, 610–11, 80 S. Ct. 1367, 4 L. Ed. 2d 1435 (1960).

To find that a statutory pension plan gives rise to contractual rights in public employees, while permitting unilateral modification of the pension "contract" by the state under certain circumstances, defies the basic contract law tenet that modification requires mutual assent. *Lar-Rob Bus Corporation* v. *Fairfield,* 170 Conn. 397, 402, 365 A.2d 1086 (1976); see note, "Public Employee Pensions in Times of Fiscal Distress," 90 Harv. L. Rev. 992, 1001–1002 (1977). "True the needed power in the Legislature to revise a plan without the consent of the parties to the 'contract' could be said to be 'implied,' but it seems odd to say the State may unilaterally rewrite its own contract or rewrite contracts between its municipal agents and others." *Spina* v. *Consolidated Police & Firemen's Pension Fund Commission,* supra, 404. In addition, the "reasonable modification" analysis may not always comport with the constitutionally mandated heightened level of

judicial scrutiny applicable under the contract clause to contractual modifications when the state is a party to the contract. See *United States Trust Co.* v. *New Jersey*, 431 U.S. 1, 26, 97 S. Ct. 1505, 52 L. Ed. 2d 92, reh. denied, 431 U.S. 975, 97 S. Ct. 2942, 53 L. Ed. 2d 1073 (1977). The two approaches that employ the limited vesting concept, allowing for reasonable modifications by the state of the statutory "contract," may thus conflict with basic contract law and contract clause analysis. It makes little sense to strain established rules of statutory interpretation to find a contract where the requisite express legislative intent is lacking, only to strain other equally well settled legal principles to allow for necessary unilateral modification by the state.

The promissory estoppel approach, in focusing attention on the reasonable expectations of the employee, ignores the distinction traditionally made between private and public entities in determining the existence of contractual rights and obligations. "[C]ourts have consistently refused to give effect to government-fostered expectations that, had they arisen in the private sector, might well have formed the basis for a contract or an estoppel." *Kizas* v. *Webster*, 707 F.2d 524, 535 (D.C. Cir. 1983). This distinction can be viewed as another way of articulating the requirement of an express legislative intent to contract. When the legislature intends to surrender its power of amendment and revision by creating a contract and thereby binding future legislatures, it must declare that intention in clear and unambiguous terms. A relinquishment of this authority should not occur by legislative inadvertence or judicial implication. To hold otherwise "requires the legislature and pension fund administrators to walk a tight rope whenever changes are indicated, and to accept risks which may turn into substantial financial obligations years after the fact." Cohn, supra, p. 48.

In this case, there is no clear expression by the legislature that the act was intended to create vested contractual rights in state employees prior to the satisfaction of all eligibility requirements. Neither the original retirement act of 1939 nor any of its subsequent amendments contain any language spelling out a contract between the state and its employees. There is no reference within the statutory scheme to the terms and conditions of a contract with respect to retirement benefits. The plaintiffs do not claim the existence of an express contract. Rather, their position appears to be that promissory emanations from the act of deferred compensation designed to induce state employees to accept and retain public employment, together with reliance on such "promises" by the employee, are sufficient to create a contractual relationship between the state and its employees. If that reasoning were carried to its logical conclusion, the state would be powerless to reduce the pay or shorten the tenure of any state employee without posing a possible contract clause violation. We do not believe that such a heavy obligation may be imposed upon the state unless the legislature clearly evidences an intent to assume it. Since no such intent is apparent in this case, we hold that the act does not create vested contractual rights and obligations in favor of state employees. In our constitutional scheme, the legislature must be free to exercise its constitutional authority without concern that each time a public policy is expressed contractual rights may thereby be created.

The fact that state employees have no vested contractual rights in retirement benefits, however, does not mean that the act confers no rights at all. Initially, we note that the employees have statutory rights to retirement benefits once they satisfy the eligibility requirements of the act by becoming eligible to receive benefits. In addition, we conclude that the statutory pension scheme establishes a property interest on

behalf of all state employees in the existing retirement fund, which interest is entitled to protection from arbitrary legislative action under the due process provisions of our state and federal constitutions. See *Flemming v. Nestor,* supra, 611; *Spina v. Consolidated Police & Firemen's Pension Fund Commission,* supra, 402. Unlike the gratuity concept, the due process approach protects public employees from legislative confiscation of the retirement fund and arbitrary forfeiture of pension benefits. At the same time, a due process analysis provides the necessary flexibility that the contract approach lacks and avoids the strain on settled principles of contract law, statutory interpretation and contract clause jurisprudence that the latter view entails. Additionally, we note that the due process approach has received favorable consideration from legal commentators. See note, supra, pp. 1003–1005; Cohn, supra, pp. 48–51. Although the plaintiff employees alleged a violation of their due process rights in their complaint, this claim was not discussed in the federal or state trial court decisions, nor was it briefed or argued by the parties on appeal. We thus decline to decide whether the 1975 revisions of the act constitute an unconstitutional deprivation of the employees' property interest in the retirement fund without due process of law.

Our holding that the act confers no contractual rights in the statutory pension plan on state employees renders it unnecessary to address the other claims raised by the parties on the appeal and the cross appeal.

There is no error.

In this opinion the other judges concurred.