JOSEPH T. GORMLEY, JR. *v.* STATE EMPLOYEES RETIREMENT COMMISSION
(14067)

PETERS, C. J., SHEA, COVELLO, BORDEN and SANTANIELLO, Js.

Argued October 2—decision released November 27, 1990

*Robert A. Whitehead,* assistant attorney general, with whom, on the brief, were *Clarine Nardi Riddle,* attorney general, and *Charles A. Overend,* assistant attorney general, for the appellant (defendant).

*Richard J. Seserman,* with whom was *Joseph T. Gormley, Jr.,* for the appellee (plaintiff).

BORDEN, J. The dispositive issue in this appeal is whether the trial court correctly determined that the application to the plaintiff of General Statutes § 51-287 (e),[1] which provides for the suspension of pension benefits to a retired state's attorney who is receiving benefits under the state's attorney's retirement fund (SARF) and who is subsequently appointed a judge, constituted an impermissible retrospective application of that statute in violation of General Statutes § 55-3.[2] The trial court reversed a declaratory ruling of the state employees retirement commission (commission) that suspended the plaintiff's pension and demanded the return of benefits paid after his appointment as a judge. Because at the time of the plaintiff's retirement § 51-287 did not require him to choose between retaining his benefits or accepting a judgeship, the court held that the application of § 51-287 (e), enacted after the plaintiff's retirement but previous to his appointment, constituted the retrospective imposition of a "new obligation" in violation of § 55-3. The defendant appealed to the Appellate Court, and, pursuant to Practice Book § 4023, we transferred the case to ourselves. We affirm the judgment of the trial court.

---

[1] General Statutes § 51-287 (e) provides: "Any such attorney who is retired under this section and who is appointed a judge shall not receive a retirement salary pursuant to this section during the period such retired attorney serves as a judge."

[2] General Statutes § 55-3 provides: "LIMITATION OF EFFECT OF CERTAIN ACTS. No provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have a retrospective effect."

The facts are undisputed. In 1962, the plaintiff was appointed a per diem assistant state's attorney and, in 1963, was appointed an assistant state's attorney for Fairfield county. In 1969, the plaintiff was appointed state's attorney for that county and thereafter, in 1973, was appointed Connecticut's chief state's attorney. From 1962 until his retirement in 1978, the plaintiff contributed 5 percent of his salary to SARF as statutorily mandated. General Statutes § 51-278 (b) (3).[3] SARF is administered and funded separately from the state employees retirement fund (SERF).

In October, 1978, the plaintiff retired and began receiving an actuarially reduced retirement income, having satisfied the statutory requirements of at least ten years of creditable service. See General Statutes § 51-287 (c).[4] At the time of his retirement, § 51-287 (e) was not a part of SARF and, as distinguished from

[3] General Statutes § 51-278 (b) (3) provides: "Each state's attorney who, on June 30, 1973, was included in the provisions of sections 51-49, 51-287 and 51-288 may elect to continue to be so included and, each state's attorney, incumbent on July 1, 1978, who was an assistant state's attorney, chief prosecuting attorney or deputy chief prosecuting attorney on June 30, 1973, may elect to be included in sections 51-49, 51-287 and 51-288, and, in each such case, the comptroller shall deduct from his salary five per cent thereof as contributions for the purposes of sections 51-49, 51-287 and 51-288, provided any person who has so elected may thereafter elect to participate in chapter 66 and thereupon his past contributions to the state's attorneys' retirement fund shall be transferred to the state employees retirement fund and he shall be credited with all prior service. All other persons appointed under the provisions of this section shall be subject to the provisions of chapter 66."

[4] At the time of the plaintiff's retirement, General Statutes § 51-287 provided: "If any such attorney resigns or is removed from office before his retirement under this section, he shall be entitled to the return of all contributions made by him under section 51-278, without interest thereon, except that, if such attorney has completed at least ten years of service creditable under this section, he may, at his option, elect instead to receive a retirement income on a reduced actuarial basis, as determined by the comptroller."

That provision was later labeled § 51-287 (c) by Public Acts 1982, No. 82-248, § 143.

SERF, SARF contained no provision for the suspension of pension rights upon a retiree's reemployment with the state.[5]

In 1985, the legislature enacted No. 85-517, § 4, of the 1985 Public Acts, which provided: "Any such [state's] attorney who is retired under this section and who is appointed a judge shall not receive a retirement salary pursuant to this section during the period such retired attorney serves as a judge." The 1985 public act is now codified as General Statutes § 51-287 (e). In July, 1987, the plaintiff was sworn in as a Superior Court judge, and continued to collect his SARF pension until November, 1988. At that time, the commission, acting pursuant to § 51-287 (e), suspended the plaintiff's retirement income and demanded repayment of $26,049.18, the amount paid to the plaintiff after his appointment.

The plaintiff sought a declaratory ruling from the commission claiming that his pension income from SARF became a vested contractual or statutory right upon his retirement in 1978, and, therefore, that either § 55-3 or the impairment of contracts clause of article

---

[5] SERF has contained a provision since 1965 preventing its participants who have retired from a state position and who are receiving a pension from collecting both a salary and pension benefits upon securing another state position. See No. 504 of the 1965 Public Acts, codified as General Statutes § 5-164a (c). General Statutes (Rev. to 1989) § 5-164a (c) provides: "No member reemployed under this section or under section 5-164 or elected to serve in the general assembly or otherwise reentering state service shall receive a retirement income during his reemployment or other state service except (1) if his services as an employee are rendered for not more than ninety working days in any one calendar year, provided that any member reemployed for a period of more than ninety working days in one calendar year shall reimburse the state retirement fund for retirement income payments received during such ninety working days; or (2) if his services are as a member of the general assembly, his retirement income payments shall not be suspended."

Until the enactment of No. 85-517, § 4, of the 1985 Public Acts, no comparable provision existed in SARF.

one, § 10, of the constitution of the United States[6] prohibited the application of § 51-287 (e) to him. After a fact-finding hearing, the commission issued a declaratory ruling that, although the plaintiff had acquired statutory rights in SARF, § 51-287 (e) operated to suspend those rights during the time of the plaintiff's appointment.

The plaintiff appealed to the Superior Court, claiming that the application of § 51-287 (e) to him (1) constituted an impermissible retroactive application of the statute, and (2) impaired vested contractual or statutory rights in his pension in violation of the federal constitution's contract clause. See footnote 6, supra. The trial court reversed the decision of the commission, concluding that the application of § 51-287 (e) to the plaintiff operated as an impermissible retroactive application of that statute. In view of that conclusion, the court did not address the issue of whether § 51-287 (e) unconstitutionally impaired the vested rights of the plaintiff. This appeal followed.

In enacting § 51-287 (e), the legislature intended to prevent "double-dipping," the collection by one person of a pension and a salary, both paid by the state. The parties agree that the legislature intended this statute to apply prospectively only.[7] They disagree, however,

---

[6] The constitution of the United States, article one, § 10, provides in pertinent part: "No State shall enter into any Treaty, Alliance, or Confederation; grant Letters of Marque and Reprisal; coin Money; emit Bills of Credit; make any Thing but gold and silver Coin a Tender in Payment of Debts; pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility."

[7] The legislative history behind No. 85-517, § 4, of the 1985 Public Acts provides in pertinent part:

"Senator [Thomas F.] Upson: Does this apply to people who are already in the system, or is this a prospective section?

"Senator Richard Johnson: My feeling is that this section is a prospective one, that is, it applies to those who will be appointed." 28 S. Proc., Pt. 15, 1985 Sess., pp. 5019–20.

While this exchange indicates that the legislature intended the statute to apply prospectively, that is, to those appointed as judges in the future,

over whether the application of § 51-287 (e) to the plaintiff constitutes a retrospective application. The commission claims that the application of the statute to the plaintiff was prospective only, because it was the appointment to a judgeship seventeen months after the statute was enacted, and not the retirement and receipt of retirement income seven years prior to the enactment, that triggered the statute.[8] Therefore, according to the commission, no new obligation was being placed upon the plaintiff in violation of § 55-3. The plaintiff claims that because he possessed vested statutory or contractual rights in his pension on retirement, the application of § 51-287 (e) to him after his retire-

it sheds little light on whether those people "already in the system" described individuals who were still employed as state's attorneys and who had not yet become eligible for a pension, individuals who were presently receiving pension benefits under the retirement plan, or both.

[8] The commission also raised an entirely new claim at oral argument in this court, namely, that pursuant to *Pineman* v. *Oechslin,* 195 Conn. 405, 416, 488 A.2d 803 (1985), the plaintiff did not possess constitutionally protected vested rights to the pension, and, therefore, that the application of General Statutes § 51-287 (e) was not retrospective. This claim was an attempt to revive on appeal the issue that the trial court did not decide, namely, whether the plaintiff had vested contractual rights that were constitutionally protected. Nonetheless, in its brief the commission refers to "the plaintiff's rights *vested* in the State's Attorney's Retirement Fund." (Emphasis added.) Because the commission failed to brief the issue of vested rights in this court, however, we consider this claim abandoned. *State* v. *Altrui,* 188 Conn. 161, 178, 448 A.2d 837 (1982); *Pastir* v. *Bielski,* 174 Conn. 193, 384 A.2d 367 (1978).

In any event, it is difficult to see how *Pineman* would help the commission, since under *Pineman* state "employees have *statutory* rights to retirement benefits once they satisfy the eligibility requirements of the [retirement] act by becoming eligible to receive benefits." (Emphasis added.) *Pineman* v. *Oechslin,* supra, 416. Thus, the plaintiff, whom the court found to have satisfied those requirements and who was *receiving* pension benefits, obviously had acquired statutory rights to his pension. The commission does not claim that the state may retrospectively diminish statutory pension benefits that a former state employee is collecting simply because they are statutory, rather than contractual, in nature. Indeed, the entire thrust of the commission's brief is that there is no retroactivity effected by § 51-287 (e), not that the issue of retroactivity vel non depends on the source of the plaintiff's pension benefits.

ment would impose a "new obligation" in violation of § 55-3, because it would require him to choose between maintaining his pension or accepting the judgeship.[9] We conclude that § 51-287 (e) must be interpreted narrowly so as not to apply to the plaintiff, because to do otherwise would impose a "new obligation" on him in violation of § 55-3.

In describing the application of new legislation to pre-existing transactions, § 55-3 provides that "[n]o provision of the general statutes, not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have a retrospective effect." "The 'obligations' referred to in the statute are those of substantive law"; *Nagle* v. *Wood*, 178 Conn. 180, 186, 423 A.2d 875 (1979); and "[l]egislation which limits or increases statutory liability has generally been held to be substantive in nature." *Little* v. *Ives*, 158 Conn. 452, 457, 262 A.2d 174 (1969). "[W]e have uniformly interpreted § 55-3 as a rule of presumed legislative intent that statutes affecting substantive rights shall apply prospectively only." *Darak* v. *Darak*, 210 Conn. 462, 467, 556 A.2d 145 (1989); *Westport* v. *State*, 204 Conn. 212, 219, 527 A.2d 1177 (1987). "The legislature only rebuts this presumption when it 'clearly and unequivocally' expresses its intent that the legislation shall apply retrospectively." *Darak* v. *Darak*, supra, 468; see also *State* v. *Lizotte*, 200 Conn. 734, 741, 517 A.2d 610 (1986).

It is undisputed that prior to the enactment of § 51-287 (e), the plaintiff would have been entitled to collect both his retirement income and a salary upon being appointed a judge. General Statutes (Rev. to 1983) § 51-287; Opinion of the Attorney General, Janu-

---

[9] Although the plaintiff also argued in the trial court that the application to him of General Statutes § 51-287 (e) would violate article one, § 10, of the United States constitution, in light of the trial court's decision, he has not reasserted that claim in this court.

ary 30, 1984 (state's attorney retired under SARF entitled to collect pension and to collect salary once appointed as a judge). The commission does not contend otherwise. The dispositive fact is not that the plaintiff was appointed as a judge seventeen months after that enactment, but that seven years earlier, when he had retired as chief state's attorney, he was statutorily entitled to receive a pension. See footnote 8, supra. He then began receiving his pension, and it is the provisions of the plan at that time that are controlling on him. The application of § 51-287 (e) would impose upon the plaintiff a new obligation, that of choosing between the continuing receipt of his pension benefits or accepting a judgeship, an obligation "to which he was not subject prior to its passage." *Little* v. *Ives*, supra, 457. The plaintiff's substantive right to continue to receive his pension regardless of his future employment would be implicated by the imposition of this new obligation. Such an implication would violate the presumed legislative intent embodied in § 55-3, unless the legislature "clearly and unequivocally" indicated that the statute was to apply retrospectively. *Darak* v. *Darak*, supra. We can find no such clear and unequivocal indication that the legislature intended § 51-287 (e) to apply to persons already collecting SARF retirement benefits. Neither the statute's language nor its legislative history; see footnote 7, supra; provides that clarity or lack of equivocation.

The commission argues that two cases, *Nagle* v. *Wood*, supra, 188, and *Massa* v. *Nastri*, 125 Conn. 144, 148, 3 A.2d 839 (1939), nevertheless support its claim that the statute is being applied prospectively to the plaintiff. These cases are distinguishable.

In *Massa* v. *Nastri*, supra, the court addressed whether a statute allowing a guest passenger to recover for personal injuries where the driver was a negligent operator, as opposed to a heedless or reckless operator, could

be applied to a driver who had negligently injured a party prior to the statute's passage. The court determined that the defendant's legal exemption from a demand of another was as much of a vested property interest as was the plaintiff's cause of action. Id., 148. The court also held that to allow the plaintiff a cause of action against the defendant for mere negligence, when at the time of the accident the defendant could be held liable only for heedless or reckless conduct, constituted the imposition of "an unexpected liability that if known might have caused those concerned to avoid it"; id.; an impermissible result because the legislature did not clearly provide for such a retroactive interpretation. Id.

To support its claim that § 51-287 (e) is not being applied retrospectively to the plaintiff, the commission relies upon the court's reference to "an unexpected liability" that could have been avoided. The commission asserts that if § 51-287 (e) were in effect at the time of the plaintiff's retirement, he could not have taken any other action to avoid its application, and, therefore, the plaintiff cannot demonstrate "an unexpected liability." This argument, however, is based upon a selective reading of *Massa* v. *Nastri,* supra. In that case the court also stated that " '[l]aws which create new obligations . . . because of past transactions, have been universally reprobated . . . .' " Id., 148. The court in *Massa* was simply applying to those particular facts the test of determining retroactivity of statutes by looking for an "unexpected liability" that could have been avoided. In this case, however, the statute would be applied retrospectively to the plaintiff because he would be required to choose between his pension or his salary as a judge, an obligation to which he was not subject prior to the passage of § 51-287 (e).

The commission also relies upon *Nagle* v. *Wood,* supra. That case involved an amendment to General

Statutes § 45-274 allowing illegitimate children to inherit from their natural father if paternity was adjudicated by a court or if the father acknowledged paternity in writing under oath, thereby expanding prior law, which prohibited illegitimate children from inheriting from the father unless the father later married the mother. Id., 184. The court, relying on the general rule that laws providing for future descent of property are prospective; id., 187; held that the amendment was not retrospective because it "related to future inheritances by illegitimate children and it conferred or took away no present right." Id.

The commission argues that, like the amendment to § 45-274 in *Nagle,* the enactment of § 51-287 (e) in this case took away no present right from the plaintiff and related only to the effect on the plaintiff's retirement benefits by a future judicial appointment. The commission also attempts to analogize the plaintiff in this case to hypothetical *legitimate* children in *Nagle,* arguing that the plaintiff, like those children, lost no present right to future benefits by the enactment of § 51-287 (e). The commission's reliance is misplaced.

Unlike the statutory amendment in *Nagle,* § 51-287 (e) did take away a right that the plaintiff possessed—a right to continue to receive his pension benefits regardless of his future employment. It proves too much to say, as the commission's argument suggests, that a statute suspending pension benefits that one is already receiving has no retrospective effect simply because that suspension will occur upon the happening of a future event. It takes little imagination to recognize that such a rule would set such benefits down a slippery slope that would undermine legitimate and settled expectations. Our case law does not go that far, and we decline to do so in this case.

The judgment is affirmed.

In this opinion the other justices concurred.