[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO SET ASIDE THE JURY'SVERDICT AND FOR ENTRY OF JUDGMENT NOTWITHSTANDING THE VERDICT.
CT Page 4595
BACKGROUND
On May 14, 1993, the jury returned a verdict in favor of all three plaintiffs in the Second Count, and in favor of the plaintiffs Fennell and Williams in the Ninth and Tenth Counts. Mr. Fennell was awarded $154,980; Mr. Williams $97,697.88; and Mr. Bracken $55,856.19, without any breakdown as to counts.
All of these verdicts were based on the jury's findings of breach of contract.
Specifically, in response to questions submitted to the jury, the jury found:
1. The defendant Pension Commission created an implied contract to include the lump sum payment for accrued sick time in the pension calculations of all three plaintiffs as a result of the pension manual having been distributed to plaintiffs and other employees (Second Count).
2. The City of Hartford and the Pension Commission created an express contract with the plaintiffs Fennell and Williams to credit them for partial years of military service in their calculations of pension benefits (Ninth Count).
3. The City of Hartford and the Pension Commission created an implied contract with the plaintiffs Fennell and Williams to credit them for partial years of military service in their calculations of pension benefits (Tenth Count).
The jury also found that language in the pension manual created a contract with the plaintiffs and that the City of Hartford ratified that contract.
The Motion to Set Aside was not argued until January 12, 1995 because trial transcripts that the plaintiffs needed for arguing the motion (acquiesced in by the court), took an inordinately long time to prepare. CT Page 4596
ARGUMENT OF THE PARTIES.
A. Arguments of the Defendants.
The defendants claim that there is no basis for a finding of any contract, express or implied, between any of the parties with respect to any benefits addressed in any of the three counts upon which they recovered. They also claim that even if the Pension Commission created a contract, any such contract is void for lack of authority (an ultra vires act), and there is no basis for a finding that the City ever ratified any contract which may have been created by the Pension Commission. The defendants also claim the court should not have submitted to the jury, issues as to whether any contracts were created with respect to pension benefits, or to the meaning of any such contracts, because those are questions of law.
The defendants further allege various errors by the court in evidentiary rulings, the court's charge, and on motion rulings.
B. Arguments of the Plaintiffs.
The plaintiffs claim that the jury's verdicts on the Second, Ninth and Tenth Counts were amply supported by the law and the evidence. In their brief in reply to the Motion to Set Aside, they claim that the Pension Commission has the power to confer pension benefits and that their acts created an implied contract to include lump sum payments for accrued sick time in calculation of the plaintiffs' pension, and that there was sufficient evidence to support these findings.
The plaintiffs further claim that both defendants created an express and implied contract to credit the plaintiffs Fennell and Williams for partial years of military service in their calculations of pension benefits, and that there was ample basis for the jury to so find.
The plaintiffs conclude by saying that a jury verdict may be set aside only when the jury could not reasonably and legally have reached their conclusion, and CT Page 4597 since the verdict in this case was based upon sufficient factual evidence on the record, and on the law, the verdict should be upheld.
DISCUSSION
In passing upon a motion to set aside a verdict, a trial court must view the evidence offered at trial "in the light most favorable to sustaining the verdict."Worchek v. Foley, 193 Conn. 582, 587 (1984), Geryk v.Atlantic Richfield Co., 19 Conn. App. 585, 586-87 (1989).
When a verdict is challenged because of a lack of sufficient evidence, the issue raised is whether the trier of fact could reasonably have concluded, upon facts established and inferences permissibly drawn therefrom, that the cumulative effect of the evidence warranted the ultimate finding made. See Coelho v. Posi-SealInternational, Inc., 208 Conn. 106, 112 (1988).
 The verdict will be set aside and judgment directed only if we find that the jury could not reasonably and legally have reached their conclusion.
Presidential Capital Corp. v. Reale, 231 Conn. 500, 506
(1994).
Second Count — Lump Sum Payment For Accrued Sick Time In Pension Calculation
The plaintiffs claim that "It was within the jury's province to determine that in fact the defendant Pension Commission had created an implied contract to include the lump sum payment within the plaintiffs' pension calculations." They further claim that "the plaintiffs introduced evidence at trial which demonstrates that the jury could reasonably have found that the Defendant Pension Commission had made an implied contract to include the lump sum payment within pension calculations." See Plaintiffs' Reply To Defendants' Motion To Set Aside the Jury's Verdict and For Entry of Judgment Notwithstanding the Verdict, dated November 14, 1994. The basis of this claim is one sentence in the application section of the pension manual, Ptfs' Exhibit CT Page 4598 PP, page 13, which says: "Earned sick leave time is not credited to pension calculation unless you are a Board of Education employee or in the City's nonbargaining units."
In 1985, the Conn. Supreme Court considered the issue of whether state employees have contractual interests in the State Employees Retirement Act, and held as follows:
 Although the legislature may authorize a contract to be made on behalf of the state; Wilson v. East Bridgeport School District, 36 Conn. 280, 282 (1869) there exists a "well-established presumption" against finding that a statute creates private vested contractual rights absent a clear showing of legislative intent to the contrary. Taliaferro v. Dykstra, 434 F. Sup. 705, 710-711 (E.D.Va. 1977). Since the effect of such authorization is to surrender the legislature's governmental power of revision and to restrict the legislative authority of succeeding legislatures, a legislative intent to create contractual rights will not be assumed unless the statutory language expressing such intent is clear and unambiguous. Indiana ex rel. Anderson v. Brand, supra, 110 (Black, J.) dissenting).
Pineman v. Oechslin, 195 Conn. 405, 410-411 (1985).
Therefore, in order for the plaintiffs to have anycontractual rights in their retirement benefits, they would have to prove that there was a clear andunambiguous showing of legislative intent to create contractual rights. The plaintiffs say that a pension manual prepared by the defendant Pension Commission, which provides that earned sick leave time would be credited to the pension calculations for pension applicants who were non-bargaining unit employees, constitutes the clear and unambiguous intent required. The defendants assert that the following words in the introduction to the pension manual specifically disclaim any intent to create a contract between the City and its employees: CT Page 4599
 The manual is a summary, not a legal document. Actual pension provisions of the Charter of the City of Hartford and collective bargaining agreements govern the plan in detail. If you wish to review the plan, it is available in the Treasurer's office.
It also states that the pension plan as set forth in the Charter can be changed and amended by the City Council through legislation and by the approval of collective bargaining agreements
The Court concludes that as a matter of law, the pension manual, when read as a whole, as it must be, cannot be reasonably construed as being a clear, unambiguous expression of legislative intent to create contractual rights in pension benefits.
 A contract is to be construed as a whole and all relevant provisions will be considered together.
Barnard v. Barnard, 214 Conn. 99, 109 (1990).
 To consider this one section as controlling would do violence to the off-repeated rule that, in the construction of a written instrument, the entire document, and not just excerpts called from it, must be considered in the light of the situation of the parties and the circumstances connected with the transaction.
Gallatly Construction Co. v. Bridgeport, 149 Conn. 588,593 (1962).
This court's point is not that there couldn't be different interpretations of the pension manual read as a whole, but rather that it could not reasonably be interpreted as a clear, unambiguous expression of legislative intent to create contract rights in the pension benefits, when read as a whole.
The plaintiffs also pointed to testimony from the CT Page 4600 plaintiff, William Bracken, that both the City Treasurer (also the Pension Commission secretary), and the City Assistant Treasurer told him that if he had any questions about vacation time or the calculations on sick time, to look at the manual, which spells it out, However, as indicted above, the manual is not, as a matter of law, clear and unambiguous. Furthermore, there was no evidence that the Pension Commission had any power to create pension benefits.
The plaintiffs rely heavily on the case of Finley v.Aetna Life Casualty Co., 202 Conn. 190 (1987), which recognizes that the issuance of an employee manual could give rise to a contract between employer and employee.Finley, page 199. However, Finley involves contractual rights in private employees, as opposed to the public employees in this case. The distinction is critical, because as stated by the Pineman court:
 "[C]ourts have consistently refused to give effect to government-fostered expectations that, had they arisen in the private sector, might well have formed the basis for a contract or an estoppel." Kizas v. Webster, 707 F.2d 524, 535 (D.C. Cir. 1983). This distinction can be viewed as another way of articulating the requirement of an express legislative intent to contract. When the legislature intends to surrender its power of amendment and revision by creating a contract and thereby binding future legislatures, it must declare that intention in clear and unambiguous terms. A relinquishment of this authority should not occur by legislative inadvertence or judicial implication.
Pineman, supra, page 415.
There is no statute, charter provision or ordinance which gives the Pension Commission the power to create or grant pension benefits.
The plaintiffs have argued on page 10 of their November 14, 1994 brief, that the evidence created a significant factual basis for the jury's determination CT Page 4601 that the Pension Commission created an implied contract to include the lump sum payment for accrued sick time in the pension calculations of the plaintiffs. However, as the court has stated above, the jury could not have reasonably found, even if it is considered as an actual issue for the jury's determination, that the pension manual, read as a whole, constituted a clear unambiguous
expression of legislative intent to create contract rights in pension benefits. See Pineman, supra, page 415.
Counts Nine and Ten — Pension Credit For Partial Yearsof Military Service.
The jury found that both the City of Hartford and the Pension Commission created an express contract and an implied contract with the plaintiffs Fennell and Williams to credit them for partial years of military service in their calculations of pension benefits.
Not all the claims made by the plaintiffs in this lawsuit were submitted to the jury. Several questions of law were reserved for judgment by the court, pursuant to Conn. Gen. Stat. § 52-216, including the claim of plaintiffs Fennell and Williams in Count Twelve, that their right to due process of law was violated by the defendants when they failed to credit them for partial years of military service toward their pension pursuant to Chapter XVII, § 3(w) of the Charter of the City of Hartford. In its Memorandum of Decision dated September 2, 1993, the Court found for the plaintiffs on this issue, pages 20-24, and ordered the defendants to recalculate their pension benefits accordingly, and to reimburse them in an amount equal to the difference between what they should have received and what they did receive, plus interest at the legal rate.
It is clear that these plaintiffs were not credited by the defendants with partial years of military service in calculation of their pension benefits. The jury could reasonably have found that they were allowed to purchase their military service time to be credited toward their pension benefits at a rate of 2.0% pursuant to Chapter XVII, § 3w) of the Charter of the City of Hartford; that they were allowed to purchase and did purchase whole and partial years of military service time (see pls' Ex. N, CT Page 4602 O, Q, V, X); that not until they were discussing their pension benefits with the City in contemplation of retirement, having already set their retirement date, were they told that they would not receive credit for the partial years of military service they had purchased; and that the City reimbursed them, without interest, for the partial years they had purchased.
Quoting from Plaintiff's Reply Brief, November 14, 1994, pages 12 and 13:
 The City Charter sections governing military service credit toward non-bargaining police officers' pension benefits are found in Chapter XVII, Sec. 3(bi) III. 5, and Sec. 3(w). It is evident from these provisions and from the evidence introduced at trial that these Plaintiffs were entitled to credit of partial years of military service toward their pension benefits. Chapter XVII, Sec. 3(bi) III. 5 states "[a]n employee may purchase up to four (4) years of military service time for service in the Armed Forces of the United States for periods of service; any of which occurred during the periods set forth in Section 27-103 of General Statutes of the State of Connecticut. . ." Section 3(w) states that "[a]ny member who is . . . not represented by a bargaining unit, who . . . served during any part of the times set forth in section 27-103
of the General Statutes of Connecticut, shall be credited . . . for all or any part of the period of such service . . ." It is clear that the language does not mean only whole years of service, therefore partial years of service should be utilized in calculating these Plaintiffs' pension benefits.
 In viewing the City Charter provisions and the actions of the Defendants, there was ample basis for the jury to reasonably decide that the Defendants had created an express and an implied contract to include partial years of military service with Plaintiffs Fennell and Williams pension calculations. CT Page 4603
The court finds the jury could reasonably and legally have reached its conclusion in Counts Nine and Ten.
Ratification
On pages 13-16 of their November 14, 1994 Reply to the defendants' Motion To Set Aside, the plaintiffs argue that the language in the pension manual created a contract with them which the defendant City of Hartford ratified.
The court, in this Memorandum of Decision, has already held that the jury could not reasonably or legally have found that the defendant Pension Commission created any contractual rights in the plaintiffs for pension benefits.
The only counts in which the jury found against the defendant City of Hartford were the Ninth and Tenth, finding that the City and the Pension Commission breached express and implied contracts with the plaintiffs Fennell and Williams to credit them with partial years of military service in their calculations of pension benefits. Nowhere in the Ninth or Tenth Count have the plaintiffs claimed any rights arising out of the pension manual.
With respect to the plaintiffs' claim that the pension manual language created express and implied contracts between the plaintiffs and the defendants, the jury found for the defendant City on both these counts.
Since the court has held that the language in the pension manual as a matter of law did not create any contract rights to pension benefits in the plaintiffs, because, as a matter of law, there was no basis for the jury to find the required clear unambiguous expression of legislative intent to create such rights, there was no contract for the City to ratify.
Even if the defendant Pension Commission, by means of the pension manual, had created an implied contract as to the lump sum sick pay calculation, the jury did not CT Page 4604 find the City liable for breach of any such contract.
Furthermore, any such act by the Pension Commission was an ultra vires act of the Commission and therefore void.
The City's Charter is the source of its powers, and the City Council has statutory authority to amend the pension plan by ordinance. Conn. Gen. Stat. § 7-450. Neither the Charter nor the City Council has granted any such authority to the Pension Commission, nor does the Commission have any statutory authority to contractually amend the pension plan:
 Where the municipal charter prescribes a particular procedure by which a specific act is to be done or a power is to be performed, that procedure must be followed for the act to be lawful.
Norwalk v. Board of Labor Relations, 206 Conn. 449, 452
(1988); citing Caldrello v. Planning Board, 193 Conn. 387,391 (1984).
The evidence was clear that the City Council is the only body in the City which has the power to amend the Charter to provide any rights to pension and other retirement benefits, and that such authority was not delegated to the Pension Commission. The Charter provides that the Pension Commission has authority only to make rules and regulations to carry out the provisions of Chapter XVII of the Charter (Chapter XVII, § 5), and this authority is limited to making rules and regulations which are not inconsistent with the terms of the Charter. See Fusco-Amatrudo Co. v. Tax Commissioner, 168 Conn. 597,604 (1975).
Therefore any action by the Pension Commission exercising that authority and creating contract rights via the pension manual is ultra vires. There was no evidence that the Pension Commission had express or implied authority to create vested contractual rights; see Hartford v. American Arbitration Association,174 Conn. 472, 479 (1978), or to ratify the same, see Stateex rel Fitzroy v. Trustees of the Fireman's Relief Fund, CT Page 4605122 Conn. 650, 660 (1932).
Therefore even if the pension manual created contractual rights in the plaintiffs for the inclusion of unused sick time in the calculation of their final average pay, the benefit conferred was not authorized by the Charter, and the actions of the Commission creating such rights were ultra vires, and the contract is void. Contracts beyond the power of a municipal body are void,Pepe v. New Britain, 203 Conn. 281, 293 (1987), and the ultra vires acts of a municipal body cannot be cured by ratification by that body, see State ex rel Fitzroy, supra, 660.
In response to a question submitted to the jury, it found that the City ratified this contract.
First of all, the court finds that there was insufficient evidence upon which the jury could reasonably and legally have found that the City ratified the contract they found was created by the Pension Commission. The evidence cited by the plaintiffs in their November 14, 1994 Reply to Defendants' Motion to Set Aside, as a matter of law is insufficient to sustain a finding of ratification by the City. Although an illegal contract can be cured by ratification of a municipal body which has the power to make such a contract, (in this case the City Council), there simply was insufficient evidence for the jury to reasonably and legally conclude that ratification occurred by the City Council.
The plaintiffs also argue on page 14 of their November 14, 1994 brief:
 "Where the contract is one which the municipality had the power to make, [however], it is possible for a court to hold that a municipality has, by taking the benefit of the contract, ratified it, or estopped itself from claiming it was not properly executed according to law." Lamarch v. Town of Middlefield, 1992 WL 158568 *3 (Conn. Super) quoting Bridgeport Brass Co. v. Drew, 102 Conn. 206, 215 (1925) (emphasis added). CT Page 4606
The plaintiffs claim that the defendant City received the benefit of their numerous years of dedication and service, and that the City received the benefit of the plaintiffs not using this sick time, but rather letting it accrue, and therefore ratification occurred.
The Lamarch case, supra, is inapposite to the instant case. Here, all plaintiffs received a payout for their unused sick time at the time they retired. They received the benefit of not using their sick time while employed, because they were paid at retirement for that unused sick time at a rate of 50%. Therefore, this is an entirely different situation from Lamarch, where the Inland Wetlands Commission for the Town of Middlefield contracted for the services of an attorney, although the town charter did not permit this. The attorney performed the services and submitted a bill which was not paid. The town did not object to the hiring of the attorney until almost a year after the services had been performed. The plaintiffs in the instant case have no such claim, inasmuch as they have been paid for their unused sick time.
CONCLUSION
The defendants' Motion To Set Aside the Jury's Verdict And For Entry of Judgment Notwithstanding The Verdict is granted as to Count Two, and denied as to Counts Nine and Ten. Inasmuch as the jury did not specify the amount of damages attributable to Counts Nine and Ten, a new trial is ordered, limited to the issue of damages as to Counts Nine and Ten.
The Court notes that in its Memorandum of Decision dated September 2, 1993, concerning issues that were submitted to the Court rather than to the jury, the Court found for the plaintiffs Fennell and Williams as to Count Twelve. The Court found that the defendants violated the rights to due process of Fennell and Williams, by failing to credit them for partial years of military service pursuant to the City of Hartford Charter, and ordered the defendants to recalculate their pension benefits accordingly. CT Page 4607
It seems to this court that the parties should be able to agree on these damages, as being the same in Count Twelve of the court decision as in Counts Nine and Ten of the jury verdict, thereby obviating the need for a new trial as to Counts Nine and Ten, but a new trial is being ordered in the event they cannot agree.
RICHARD A. WALSH, J.