[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. Factual and Procedural Background
This action is the latest in a controversy that has spanned three decades. It has involved a number of proceedings before the Claims Commissioner and the former State Personnel Appeal Board, as well as two trial court actions prior to this one. It has spawned three special acts and arguably one public act. The controversy has to date been the subject of two decisions of the Connecticut Supreme Court. That the matter has persisted for so long is a tribute to the energy and perseverance of the Plaintiff, Ludmil Chotkowski.
The matter had its genesis when in 1969 the State hired the Plaintiff to serve at the Rocky Hill Veterans' Home and Hospital with the title Special Assistant. (Defendant's Exhibit A). He received a formal written appointment dated November 7, 1969, and November 14, 1969, setting his salary at $1,343.30 biweekly. (Defendant's Exhibits A and B). In February, 1975, the position of Special Assistant was cancelled. (Defendant's Exhibit D). By that time the Plaintiff's salary had risen to $1,492.57 biweekly. (Plaintiff's Exhibit 2, p. 7). He was then classified as "Professional Specialist," with no change in his salary. (Plaintiff's Exhibit 2, p. 7). On June 6, 1975, the Plaintiff was reclassified and appointed to the position of Chief of Medicine at the lower salary of $1,188.93 biweekly. (Id.; Defendant's Exhibit F).
The Plaintiff protested this decrease in salary, as demonstrated by his voluminous correspondence with persons at both the Veterans' Home and elsewhere in the State administration. (Plaintiff's Exhibit 2, pp. 12-24). By letter dated May 20, 1975, the Plaintiff requested that the Department on Personnel and Administration afford him "the opportunity of appealing this decision before it should become final." By letter dated June 3, 1975, Commissioner Frederic Rossomando responded to the Plaintiff, stating: "I am advised that there is CT Page 1012 no existing statute or regulation which would permit such an appeal, either to me or any other appropriate body." (Defendant's Exhibit E).
On April 8, 1976, the Plaintiff was terminated from his position as Chief of Medicine. (Defendant's Exhibit G). This termination had nothing to do with his performance as a doctor, which had always been excellent. Rather, the Plaintiff was terminated because of his continuing conflicts with the administration over his reclassification as Chief of Medicine, and the accompanying pay decrease.
The Plaintiff appealed his termination to the Personnel Appeal Board. The Board ruled it had no jurisdiction to hear the appeal because when he was reclassified as Chief of Medicine, the Plaintiff had begun a new working test period, which he had not completed at the time of his termination. The trial court reversed the Board's decision and the Supreme Court affirmed the trial court's ruling, holding that, contrary to the Board's conclusion, at the time of termination the plaintiff was a "permanent employee in the classified service" pursuant to General Statutes § 5-202 (a), and therefore had a right to appeal his termination to the Board. Chotkowski v. ConnecticutPersonnel Appeal Board, 176 Conn. 1 (1978) (herein, "Chotkowski I"). The Court remanded the case to the Board for a full hearing on the merits of the Plaintiff's termination.
In the meantime, the Plaintiff had obtained other State employment. On May 7, 1976, the Plaintiff was appointed as "Internist" at Connecticut Valley Hospital ("CVH") at a salary of $1,140.96 biweekly. (Plaintiff's Exhibit 2, pp. 7, 32). By the time of the decision in Chotkowski I in 1978, he was receiving a salary of $1,234.22 biweekly at CVH. (Id. p. 7). He remained in State service at CVH until his retirement in June 1986.
Thus, "[a]fter the case had been remanded to the State Personnel Appeal board, the parties reached a settlement of the Plaintiff's claims relating to the termination of his employment." Chotkowski v. State, 213 Conn. 13, 14 n. 1 (1989) (herein, "Chotkowski II"). The terms of the settlement are set forth in the Board's Decision on Appeal, issued December 11, 1978. (Defendant's Exhibit H). The Veterans' Home and Hospital agreed: 1) to withdraw the Plaintiff's unsatisfactory rating; 2) not to give out negative information about the Plaintiff's CT Page 1013 employment; and 3) to pay the Plaintiff $4,000.00. Paragraph 4 of the Decision recites the following agreement of the Plaintiff appellant:
 In consideration of the above, the appellant agrees to terminate any and all proceedings pending before any state or federal agency or court of law and further agrees not to initiate any other proceeding before the Veterans Home and Hospital of the State of Connecticut, or before any other state or federal agency or court of law relating to his involuntary termination.
On October 4, 1979, the Plaintiff then filed with the Claims Commissioner a notice of his claim that the State had improperly reduced his pay for the period October 14, 1975, through April 8, 1976.[1] Chotkowski II, 213 Conn. 13, 14 n. 1 (1989).
 It is undisputed that, when the plaintiff first presented his notice of claim to the Commission pursuant to General Statutes § 4-147, no award was made because the claim was barred by the one year limitation for presenting claims against the state prescribed by General Statutes § 4-148 (a). The legislature rejected the Commissioner's recommendation, however, and enacted a special act [Sp. Act 85-24] allowing the plaintiff to prosecute his claim against the state despite the untimely notice. After this enactment the plaintiff reasserted his claim before the Commissioner, who, in reliance on the special act, granted the plaintiff permission to sue the state in accordance with § 4-160.[2]
Id. at 15-16. Thereafter, the Plaintiff sued the State alleging express contract, implied contract and estoppel. (Defendant's Exhibit C).
The trial court denied the Defendant's motion to dismiss for lack of jurisdiction. Chotkowski II, supra, 19, n. 8. The trial court thereafter granted the Defendant's motion for CT Page 1014 summary judgment, ruling that the Plaintiff, as a permanent employee in the classified service, had no contractual rights, but only statutory rights. Chotkowski v. State, judicial district of Hartford/New Britain at Hartford, Docket No. CV 87-0329874 (December 16, 1988, O'Neill, J.). The Plaintiff appealed.
In a per curiam ruling, the Supreme Court heldSpecial Act 85-24 unconstitutional as an "exclusive public emolument or privilege" that served no "public purpose." ChotkowskiII, supra, 17-18 (1989). Therefore, since the Plaintiff had not timely presented his claim, the court had no jurisdiction. Accordingly, the trial court should have granted the Defendant's motion to dismiss. Finding error in the form of the judgment only, the Supreme Court remanded the case with direction to enter a judgment of dismissal, rather than a summary judgment for the Defendant. Id., 19. Judgment of dismissal entered on January 20, 1990. (Exhibit J, attached to Defendant's proposed findings of fact).
The Legislature then enacted Public Act 90-284, now codified as Gen. Stats. § 4-148 (b). This section permits the General Assembly to pass a special act authorizing a person to present a claim to the Claims Commissioner after expiration of the time limitation therefor, if the General Assembly deems it to be just and equitable and makes an express finding that the authorization is supported by compelling circumstances and would serve a public purpose. The statute expressly provides: "Such finding shall not be subject to review by the superior court." Gen. Stats. § 4-148 (b).
Under the authority of Gen. Stats. § 4-148 (b), the Legislature then enacted Special Act 91-8, permitting Plaintiff to present his claim against the State to the Claims Commissioner. The requisite findings are contained in Section (b). These findings recite pertinent of the foregoing facts concerning Plaintiff's positions and salary at the Rocky Hill Veterans' Home and Hospital, including the foregoing quoted portions of his May 20, 1975 request letter and the June 3, 1975 response letter. (Defendant's Exhibit E). The following express findings are then set forth:
 The general assembly therefore finds that Ludmil Chotkowski failed to timely file a notice of a claim against the state with the claims commissioner because he was misinformed CT Page 1015 by the state official and was misled by such official into believing that he had no right of redress against the state for the damages he allegedly suffered. The general assembly further finds that it would be just and equitable to authorize Ludmil Chotkowski to present his claim against the state to the claims commissioner, that there are compelling equitable circumstances to support such authorization and that such authorization would serve a public purpose.
Pursuant to Special Act 91-8, the Plaintiff once again presented his claim to the Claims Commissioner, who granted permission to sue. Although the Claims Commissioner ruled that he was "without authority to determine the constitutionality of either a Special Act or Public Act of the General Assembly," in permitting suit he specifically found Plaintiff's claim "raises several issues of law and fact for which the State, were it a private person, could be held liable." (Plaintiff's Exhibit 2, Memorandum of Decision of Commissioner Mariani, dated May 6, 1993).
The Plaintiff thereafter brought this action. His substitute complaint in this action makes virtually the same allegations as his complaint in Chotkowski II. (Defendant's Exhibit C).
The Defendant State of Connecticut has asserted eight special defenses. In order, these are: First, failure to state a claim upon which relief can be granted, Second, laches; Third, statute of limitations; Fourth, res judicata; Fifth, sovereign immunity; Sixth, unconstitutionality of Gen. Stats. §4-148 (b); Seventh, unconstitutionality of Special Act 91-8; and Eighth, release. The issues incident to the Fifth, Sixth and Seventh Special Defenses will be reviewed first, under the heading "Constitutional Issues".
II. Constitutional Issues
Article First, § 1 of the Connecticut Constitution provides as follows:
Sec. 1. All men when they form a social CT Page 1016 compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community.
The Defendant contends that, just as was the case withSpecial Act 85-24 held unconstitutional in Chotkowski II, supra, the enabling Special Act 91-8 has no public purpose, but "operates to confer private gain on an individual" in violation of the constitutional prohibition. Beccia v. Waterbury, 192 Conn. 127,134 (1984). The constitutional issue of the validity ofSpecial Act 91-8 must first be decided before considering the merits of Plaintiff's claim. Chotkowski II, supra, 17.
A. General Statutes § 4-148 (b)
The threshold inquiry is whether judicial review is barred by General Statutes § 4-148 (b), enacted byPublic Act 90-284. That statute reads as follows:
 (b) The general assembly may, by special act, authorize a person to present a claim to the claims commissioner after the time limitations set forth in subsection (a) of this section have expired if it deems such authorization to be just and equitable and makes an express finding that such authorization is supported by compelling circumstances and would serve a public purpose. Such finding shall not be subject to review by the superior court. (Emphasis added).
An issue of constitutional magnitude implicating the potential expenditure of public funds for a private purpose is here involved.
Lyman v. Adorno, 133 Conn. 511 (1947) upheld the constitutionality of a legislative act granting a so-called "bonus" to veterans of World War II. In so doing, the Supreme Court noted that the prohibition of Article First, § 1 against the granting of public funds to private individuals for purposes serving only private gain is a "fundamental principle of American democracy." Id., 515. Specifically, the court held that it was not bound by the findings of public purpose set forth in the legislation. CT Page 1017
 While legislative findings of fact are persuasive, the question whether an expenditure of public money is for a public purpose is a subject of judicial inquiry, and they are not controlling upon the courts when required to determine such a question.
Id., 517. As stated in Wilson v. Connecticut Product DevelopmentCorporation, 167 Conn. 111, 116 n. 2, citing Lyman:
 [The legislature cannot] by mere fiat or finding, make "public" a truly "private" purpose so as to authorize an appropriation of public funds surreptitiously. Its findings and statements about what is or is not "public" cannot be binding upon the court.
The Court concludes that it is not barred by General Statutes § 4-148 (b) from reviewing the constitutionality ofSpecial Act 91-8.
B. Special Act 91-8
Challenging a statute on constitutional grounds "always imposes a difficult burden on the challenger." Faraci v.Connecticut Light Power, 211 Conn. 166, 168 (1989). Every presumption must be made in favor of validity, and the act must be sustained unless its invalidity is beyond a reasonable doubt. Lublin v. Brown, 168 Conn. 212, 220 (1975). The Supreme Court has taken "a broad view of the legislative goals that may constitute a `public purpose.'" Beccia v. Waterbury,192 Conn. 127 (1984) (upholding the constitutionality of a statute providing an undefined preference for members of a local fire department in the selection of a local fire marshal).
In this action, it is the State who is challenging the constitutionality of the Special Act. The State has standing to do so, as this action is properly in court on nonconstitutional questions. Tough v. Ives, 162 Conn. 274, 291-92
(1972), citing Ducharme v. Putnam, 161 Conn. 135, 139 (1971).
Tough v. Ives affirmed the sustaining of a demurrer to a count in a complaint based on a special act authorizing the plaintiff to sue the defendant commissioner in negligence, CT Page 1018 and denying the defense of concurring negligence. Since the benefit so granted to the plaintiff was unavailable to others similarly situated, the grant violated Article First, § 1. In so holding, Tough enunciated three grounds or principles distinguishing cases cited in support of the special act.
 Each of these cases involves a situation where at most the remedy, rather than the grounds of the action, was affected; where no right of the opposing party was affected; or where the State recognized an honorary obligation so that substantial justice could be realized.
Tough v. Ives, supra, 294.
This distinction was evident in Sanger v. Bridgeport,124 Conn. 183 (1938). Sanger, upheld the constitutionality of a special act validating a deficient notice to the defendant city of an injury to the original plaintiff allegedly caused by a defective sidewalk, thereby permitting the lawsuit to be maintained. The deficient notice had been prepared by an assistant to the city clerk, upon whom the plaintiff had allegedly relied for its preparation and to whom she had given all essential facts statutorily necessary for sufficient notice. Noting that the special act did not enlarge the plaintiff's claim in any way, but merely removed a bar to suit, the court held that the case presented "a situation which would afford strong equitable grounds for legislative interference . . . and it is safe and fair to presume that these grounds were considered by the General Assembly and motivated the passage of the act." Id., 189.
Sanger is to be contrasted with Hillier v. East Hartford,167 Conn. 100 (1974), another snow and ice fall case against a municipality. Hillier held unconstitutional a special act validating the otherwise untimely notice of the fall given to the defendant more than one year after the incident. The special act stated as its purpose that "Mrs. Hillier was not aware of the thirty-day notice requirement, nor did she consult an attorney within the notice period." The court noted that the second and third grounds enunciated in Tough v. Ives, supra, for supporting the validity of special acts were not present. In contrast to Sanger, not only was the defendant "obviously hopelessly prejudiced" in its defense by the passage CT Page 1019 of over a year after the incident, but also the recognition of "an honorary obligation so that substantial justice could be realized," that was "well illustrated" by Sanger, was lacking. Id., 107.
Likewise, Merly v. State, 211 Conn. 199 (1989), invalidated a special act excusing the failure of the plaintiff administrator to present his claim to the Claims Commissioner within one year after it accrued as required by General Statutes § 4-148 (a). In Merly, the plaintiff sought damages for the death by suicide of his decedent while a patient at a hospital operated by the State. The fact that decedent's family, after learning of the suicide, did not start any investigation into the circumstances under which it had occurred, "constituted as a matter of law a failure to exercise reasonable care to discover the accrual of a wrongful death claim." Id., 208. In other words, compelling equitable considerations did not exist. See also, Vecchio v. Sewer Authority, 176 Conn. 497 (1979), invalidating for lack of compelling equitable circumstances, a special act authorizing a late appeal from a tax assessment where the court found that sufficient statutory notice of the assessment had been given.
The circumstances of the action here at issue more closely resemble those of Sanger. The Court cannot find that the legislative finding, set forth in Section (b) ofSpecial Act 91-8, that the Plaintiff "failed to timely file a notice of his claim with the claims commissioner because he was misinformed by a state official" is not supported by the evidence. Accordingly, each of the aforementioned Tough v. Ives principles are present. Only a remedy is affected; the State is not prejudiced since it has had notice of Plaintiff's claim for almost twenty years; and compelling equitable circumstances supporting the special act are present.
The Court concludes that Special Act 91-8 does not violate Article First, § 1.
C. Sovereign Immunity
Sovereign immunity generally bars actions against the State for money damages. Fetterman v. University of Connecticut,192 Conn. 539, 550 (1984). General Statutes § 4-160 empowers the Claims Commissioner to authorize suit against the State, and provides that sovereign immunity is thereby waived. CT Page 1020 The Commissioner may do so when he "deems it just and equitable . . . on any claim which, in his opinion, presents an issue of law or fact under which the state, were it a private person, could be liable." Gen. Stats. § 4-160 (a). The Commissioner has done so. Sovereign immunity has been waived. The Defendant's additional assertion that the Claims Commissioner was without jurisdiction to do so by reason of General Statutes § 4-142 (1) and (3) is without merit.
The Court rules against the Defendant on the Fifth, Sixth and Seventh Special Defenses.
III. Impediments to Suit
The Second, Third, Fourth and Eighth Special Defenses, respectively laches, statute of limitations, res judicata and release, allege impediments to suit, and must be reviewed prior to a review of the merits of Plaintiffs case. These defenses will be reviewed in order. To an extent, these defenses are intertwined.
A. Laches
Laches consists of a delay by one party that is inexcusable and has prejudiced the other party. Kurzatkowski v.Kurzatkowski, 142 Conn. 680 (1955). It is an issue of fact for the trier. Leary v. Stylarama of New Haven, Inc., 174 Conn. 217
(1978). There is no question but that the Plaintiff has pursued his claim with vigor and tenacity. The Plaintiff is not guilty of laches.
B. Statute of Limitations
The Defendant bases this defense on the combination of Subsections (a) and (c) of General Statutes § 4-148 concerning presentation of claims to the Claims Commissioner, and its foregoing claim of unconstitutionality of Special Act 91-8. General Statutes § 4-148 (a) sets a one-year statute of limitations for presentation of a claim after its accrual. Subsection (c) provides that "no claim once considered by the claims commissioner, by the general assembly, or in a judicial proceeding shall again be presented against the state in any manner."
Clearly, the circumstances proscribed by Subsection (a) and (c) have occurred. However, these provisions are preempted CT Page 1021 in this case by the express language of General Statutes § 4-148 (b) and Special Act 91-8. This action is not barred by the asserted statute of limitations. Merly v. State, supra, 211 n. 12.
C. Res Judicata
Under the doctrine of res judicata, or claims preclusion, a prior judgment on a claim is an absolute bar to a subsequent action on the same claim. State v. Ellis, 197 Conn. 436,462 (1984). The doctrine bars and the earlier judgment precludes not only claims that were asserted, but also those that could have been asserted. Duhaime v. American ReserveLife Ins. Co., 200 Conn. 360, 365 (1986); Restatement (Second) of Judgments § 25. Res judicata, however, does not preclude a second suit where the prior judgment was not "on the merits," such as a dismissal for lack of jurisdiction. Milgrim v.Deluca, 195 Conn. 191, 194-95 (1985); In re Juvenile Appeal
(83-DE), 190 Conn. 310, 313-14 (1983); Restatement (Second) of Judgments § 20(1)(a).
Defendant bases this defense in part on the judgment in Chotkowski II, supra, and the prohibitory language of General Statutes § 4-148 (c), discussed above. The judgment inChotkowski II was not on the merits but was a dismissal for lack of jurisdiction. Defendant's reliance on § 4-148 (c) along with its dependent claim concerning Special Act 91-8 have already been rejected by this Court. The action is not barred by the doctrine of res judicata.
D. Release
The Defendant predicates this defense on the settlement agreement reached after the Chotkowski I remand and memorialized in the foregoing Personnel Appeal Board Decision on Appeal issued December 11, 1978. The Defendant asserts that this agreement carries with it a release of the Plaintiff's subject claim of an improper diminution of pay. No such release signed by the Plaintiff was presented in evidence.
The language of the settlement agreement, quoted supra from the Board's Decision, supports the Plaintiff's claim that this release related only to his involuntary termination. Accordingly, the special defense of release has not been proved. CT Page 1022
IV. The Merits
The Plaintiff seeks damages for the alleged wrongful reduction of his rate of pay. His Substituted Complaint is in three counts, respectively founded on theories of (1) breach of express contract, (2) estoppel and (3) breach of implied contract. Each of these counts is predicated upon a contract of employment.
A. Damages Claim
The plaintiff claims damages for the period from June 5, 1975, the date of his reclassification at a lower salary, to the date of his retirement from State service in June 1986. He was terminated from his position at Rocky Hill Veterans' Home and Hospital on April 8, 1976. As noted in Chotkowski I, supra, the Plaintiff did not seek the remedy of reinstatement in his appeal to the Personnel Appeal Board[3] for wrongful discharge. Id., 6. Instead, he apparently was satisfied to remain in his position at Connecticut Valley Hospital which he had voluntarily commenced on May 7, 1976. The Court also notes that he was paid $4,000.00 as part of the settlement concerning that termination. (Defendant's Exhibit H). Therefore, the Court finds that the Plaintiff's damages claim, to the extent that he may be entitled to damages, is limited to the period from June 6, 1975 to April 8, 1976. This period comprises approximately 22 biweekly pay periods.
The Court will accept the Plaintiff's damages computations for this period submitted in this action. On June 6, 1975, the Plaintiff's base biweekly rate of pay was reduced from $1,492.57 to $1,188.93, a biweekly reduction of $303.64. Multiplied by the 22 biweekly pay periods involved, this results in a loss of $6,680.08.
Accordingly, the Court finds that the Plaintiff is entitled to $6,608.08 damages provided that he can establish liability on the part of the Defendant under one of the theories of his complaint. These theories will now be reviewed. The viability of these theories is challenged by Defendant's first Special Defense.
B. Express Contract
CT Page 1023
The Plaintiff contends that the provisions of his formal appointment embodied in the correspondence of November 7, 1969 and November 14, 1969 (Defendant's Exhibits A and B) constituted an express written contract of employment, a contract breached by the unilateral reduction of his rate of pay. It is undisputed that by virtue of this appointment, the Plaintiff became a permanent State employee in the classified service.Chotkowski I, supra, 6.
Pineman v. Oechslin, 195 Conn. 405 (1985) involved the analogous issue of whether State employees have contractual interests in the State Employees Retirement Act, General Statutes §§ 5-152 through 5-192x. The trial court, after examining the Retirement Act and other statutes which it deemed relevant, concluded that in enacting the Retirement Act the Legislature never intended to create contractual rights in State employees. Id., 407. The Supreme Court affirmed the trial court's conclusion, holding that public employee rights created by statute are not contractual in nature.
 Although there is a seductive appeal in the contract-oriented approaches adopted by other jurisdictions, we decline to depart from the well established rules of statutory construction . . . namely, that a statute does not create vested contractual rights absent a clear statement of legislative intent to contract.
Id., 414.
The principle of Pineman was followed in Kinney v.State, 213 Conn. 54, cert. denied, 498 U.S. 898 (1989). Kinney
held that "it is clear as a matter of law that statutorily mandated salary, such as provided for judges in General Statutes §51-47, does not create a private contract." Id., at 213 Conn. 65
n. 17.
In Morse v. State, judicial district of Hartford/New Britain at Hartford, Docket No. 393050 (September 1, 1992, Hennessey, J.), the plaintiff brought a breach of contract action against the State Comptroller alleging failure of the State to compensate her for services that she provided pursuant to an employment contract between the State and the union of which she was a member. The court ruled against the plaintiff, CT Page 1024 stating:
 The contract does not give an employee a right to bring a civil action [for contract breach]. In addition, the legislature has not created a right to sue the State under a common law theory of breach of contract. Therefore, the court does not have subject matter jurisdiction over a suit arising from an alleged breach of an employment contract.
In granting the State's motion for summary judgment, the trial court in Chotkowski II, cited supra, ruled:
 Plaintiff is a member of the classified service. No member of the classified service has any contract of employment express or implied with the State of Connecticut. Plaintiff's rights are purely statutory. He has no statutory right for the breach of any employment contract as a member of the classified service.
Id., 5-6. (Citations omitted).
The Plaintiff cites Millard v. Connecticut PersonnelAppeal Board, 70 Conn. 541, 546-47 (1976) for the proposition that a State employee who becomes a permanent employee in the classified service gains a property interest in his position. The reliance is misplaced. Pineman v. Oechslin, supra, 416-17, distinguished contractual rights to a position from property rights stemming therefrom. Millard involved an issue similar to that in Chotkowski I, namely whether a discharged employee was a permanent employee in the classified service and thus entitled to a hearing.
The Plaintiff Ludmil Chotkowski was a permanent employee in the classified service. The terms of his employment were purely statutory, not contractual. He has no cause of action for breach of express contract, as alleged in the First Count of his complaint.
C. Implied Contract
CT Page 1025
The Plaintiff alleges that the "circumstances under which the plaintiff was offered employment with the defendant and the specific acts and conduct of defendant's agents in promising to pay the plaintiff at a specific rate and subject to projected increases constituted an agreement resulting from an implied contract between plaintiff and defendant." (Third Count, ¶ 12.).
An implied contract arises from a "failure to perform duties imposed either by a contract implied in fact or a contract implied in law, also often called a quasi-contract."Therrien v. Safeguard Mfg. Co., 180 Conn. 91, 94 (1980). "A contract implied in fact, like an express contract, depends on actual agreement." Id. "A contract implied in law requires, as a foundation, that there be an obligation created by law that imposes a duty to perform." Id., 95.
No such implied contract, whether in fact or law, has been proved. On the contrary, whatever rights Plaintiff possessed were derived from statute, not from contract. He has no cause of action for breach of implied contract as alleged in the Third Count of his Complaint.
D. Estoppel
The Second Count of Plaintiff's complaint alleges a claim of promissory estoppel.
 There are two essential elements to an estoppel — the party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act in that belief, and the other party influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done.
Reinke v. Greenwich Hospital Assn., 175 Conn. 24, 28-29 (1978). The party claiming estoppel has the burden of establishing the facts necessary to the claim O'Sullivan v. Bergenty,214 Conn. 641, 650 (1990).
 In addition, estoppel against a public agency is limited and may be invoked: (1) CT Page 1026 only with great caution; (2) only when the action in question has been induced by an agent having authority in such matters; and (3) only when special circumstances make it highly inequitable or oppressive not to estop the agency. . . . As noted, this exception applies where the party claiming estoppel could be subjected to substantial loss if the public agency were permitted to negate the acts of its agents. [I]t is the burden of the person claiming the estoppel to show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge.
Kimberly-Clark Corporation v. Dubno, 204 Conn. 137, 148 (1987) (sustaining taxpayer's appeal from sales and use tax assessment where tax commissioner had issued declaratory ruling that subject equipment would be exempt).
Plaintiff argues in his post trial brief that his "proofs are replete with the promises and representations made by the defendant's agents [the Veterans Home and Hospital Commission], which induced him to leave his private medical practice and assume full time permanent employment with the State on a tenured basis after completion of a probationary period." (Plaintiff's Brief, p. 23). The asserted "proof" tracks the allegations of his complaint that these agents promised "he would be paid $35,000.00 per year, and . . . that said rate of pay would be subject to future increases. . . ." (Second Count, ¶ 11).
There is no proof that these "agents" were empowered to bind the State by contract where none was implied by statute. "There is no presumption that an agent has such authority. . . ."Kimberly-Clark Corporation v. Dubno, supra, 148. Moreover, the foregoing facts claimed proved are "neither sufficiently promissory nor sufficiently definite to support contractual liability." D'Ulisse-Cupo v. Board of Directors ofNotre Dame High School, 202 Conn. 206, 214 (1987). At best, these facts merely evidence Plaintiff's reasonable expectations.
The promissory estoppel approach, in CT Page 1027 focusing attention on the reasonable expectations of the employee, ignores the distinction traditionally made between private and public entities in determining the existence of contractual rights and obligations. "[C]ourts have consistently refused to give effect to government-fostered expectations that, had they arisen in the private sector, might well have formed the basis for a contract or an estoppel." Kizas v. Webster, 707 F.2d 524, 535
(D.C. Cir. 1983). This distinction can be viewed as another way of articulating the requirement of an express legislative intent to contract.
Pineman v. Oechslin, supra, 415. No such legislative intent here exists. The Plaintiff cannot prevail on the Second Count of his complaint.
V. Conclusion
In summary, the Court finds and concludes:
 1. The Court is not barred by General Statutes § 4-148 (b) from reviewing the legislative findings set forth in Special Act 91-8.
 2. Special Act 91-8 does not violate Article First, § 1 of the Connecticut Constitution.
 3. The Defendant cannot prevail on its Second through Eighth, inclusive, Special Defenses.
 4. Should the Plaintiff prevail on his complaint, he is entitled to damages for the period of June 6, 1975 to April 8, 1976, totalling $6,680.08.
5. The Plaintiff cannot prevail on his complaint.
Judgment may enter for the Defendant.
DAVID L. FINEBERG JUDGE, SUPERIOR COURT CT Page 1028